**Harshad G. SHAH, M.D., Petitioner,**

v.

**Ronald MOSS, Respondent.**

No. 00–0091.

Supreme Court of Texas.

Argued Jan. 31, 2001.

Decided Dec. 20, 2001.

Rehearing Overruled March 21, 2002.

Barbara A. Bauernfeind, Wagstaff, Alvis, Stubbeman, Seamster & Longacre, Abilene, Michael B. McKinney, Stubbeman, McRae, Sealy, Laughlin & Browder, Midland, for petitioner.

Drew Mouton, Bancroft, Mouton & Wolf, Big Spring, Denice Smith, Cash Allen, L.L.P., Houston, for respondent.

Justice BAKER delivered the opinion of the Court, in which Justice HECHT, Justice OWEN, Justice JEFFERSON and Justice RODRIGUEZ joined.

The issue in this case is whether limitations bars the plaintiff's medical mal-

practice claims. Ronald Moss sued Dr. Harshad G. Shah, claiming Dr. Shah negligently performed surgery on Moss's right eye and neglected to provide adequate follow-up treatment. The trial court granted Dr. Shah's summary-judgment motion, which alleged that Moss did not file suit within two years of the tort or breach, as the Medical Liability and Insurance Improvement Act requires. *See* TEX.REV.CIV. STAT. art. 4590i, § 10.01. The court of appeals held that Moss's claims were not barred, reversed the judgment, and remanded the cause to the trial court. 7 S.W.3d 690, 694. We disagree and hold that article 4590i section 10.01 bars both Moss's negligent surgery and negligent follow-up treatment claims. Accordingly, we reverse the court of appeals' judgment and render judgment for Dr. Shah.

## I. BACKGROUND

On May 9, 1991, Moss first saw Dr. Shah after another eye doctor diagnosed a detached retina in Moss's right eye. On June 21, 1991, Dr. Shah surgically implanted a scleral buckle to keep Moss's retina in place. Moss continued to have problems with his vision after the surgery, but Dr. Shah warned him that removing the scleral buckle could result in another retinal detachment. Moss visited another specialist for an opinion about his blurred vision. And, based on that specialist's recommendation, Dr. Shah removed the scleral buckle on November 28, 1992.

Moss saw Dr. Shah five times for post-surgery "recheck" visits, the first visit occurring two weeks after the November 1992 surgery. Moss then saw Dr. Shah twice in January 1993 for "one month recheck" visits and once in May 1993 for a "three month recheck" visit. Finally, Moss visited Dr. Shah on October 21, 1993, for a final recheck visit.

Moss did not visit Dr. Shah again until a "yearly exam" on November 22, 1994. At that time, Moss complained about a "new floater" in his vision that appeared since the last recheck visit. Dr. Shah discovered that Moss's retina had again detached. Consequently, Dr. Shah repaired the second detached retina on December 12, 1994. But Moss still complained about blurred vision after that surgery. And, despite several other procedures and eventual cataract surgery, Moss eventually lost sight in his right eye. Moss visited Dr. Shah for the last time on July 24, 1995, when Dr. Shah told Moss he could do nothing more to improve his vision.

Moss notified Dr. Shah about his malpractice claims on April 19, 1996, and filed suit on June 28, 1996. In his petition, Moss claims Dr. Shah, in November 1992, negligently removed the scleral buckle that Dr. Shah previously implanted to repair Moss's detached retina. He further alleges that Dr. Shah did not adequately monitor Moss's eye following the surgery. Specifically, Moss claims that Dr. Shah's negligent surgery and failure to carefully monitor Moss's condition on a weekly or monthly basis to detect and prevent further retina detachments caused the eventual blindness in his right eye.

Dr. Shah moved for summary judgment, claiming that the two-year statute of limitations in article 4590i section 10.01 bars Moss's claims. Dr. Shah alleged that Moss should have filed suit within two years after November 28, 1992, the date Dr. Shah surgically removed the scleral buckle. In response, Moss presented Dr. Conrad Moore's affidavit as expert summary-judgment evidence. Dr. Moore opined that Moss's past experiences with a retinal detachment and tears required Dr. Shah to provide Moss with careful and continuous follow-up treatment. He stated that the "removal of the scleral buckle,

without careful follow-up on a weekly or monthly basis thereafter" was a deviation from the standard of care and caused Moss's second retinal detachment. Dr. Shah then supplemented his summary-judgment evidence with his own affidavit wherein he stated that he did not provide Moss with a continuing course of treatment after the November 1992 surgery. He explained that Moss's retina was attached after that surgery and thus further continuous treatment was unnecessary. Dr. Shah also claimed that Moss's visits from November 1992 through November 1994 were routine periodic checkups. The trial court granted summary judgment for Dr. Shah.

Moss appealed, arguing that his claims are not time-barred because Dr. Shah engaged in a negligent course of treatment for Moss's eye problem that continued until his last office visit on July 24, 1995. The court of appeals agreed and reversed the trial court's judgment, holding that limitations did not bar Moss's negligence claims. 7 S.W.3d at 694. The court relied on the part of section 10.01 that provides that limitations begins to run from the date the medical treatment that is the subject of the claim is completed. TEX. REV.CIV. STAT. art. 4590i, § 10.01.

We granted Dr. Shah's petition for review to determine if article 4590i section 10.01 bars Moss's medical negligence claims.

## II. THE PARTIES' CONTENTIONS

Dr. Shah argues that Moss's two medical-negligence claims are time-barred under article 4590i section 10.01. First, he argues that limitations bars Moss's negligent-surgery claim because the surgery occurred on an ascertainable date and thus limitations runs from that date for any resulting injuries. *See Earle v. Ratliff,* 998 S.W.2d 882, 887 (Tex.1999) (holding that limitations began on surgery date because the plaintiff did not allege post-surgical negligence); *Gormley v. Stover,* 907 S.W.2d 448, 449–50 (Tex.1995) (same). Specifically, Dr. Shah contends, Moss's negligent-surgery claim is barred because his suit was not brought within two years after the November 1992 surgery.

Second, Dr. Shah argues that limitations also bars Moss's negligent follow-up treatment claim. He contends that Moss's allegation that Dr. Shah should have ordered weekly or monthly exams after the surgery does not establish a course of treatment, because this Court has held that " '[w]hile the failure to treat a condition may well be negligent, we cannot accept the self-contradictory proposition that the failure to establish a course of treatment is a course of treatment.' " *Bala v. Maxwell,* 909 S.W.2d 889, 892 (Tex.1995) (quoting *Rowntree v. Hunsucker,* 833 S.W.2d 103, 108 (Tex.1992)). Dr. Shah urges that limitations could run only from dates Moss actually visited the office. Therefore, the last date Dr. Shah could have breached any duty to provide additional follow-up care was on October 21, 1993, the last recheck visit. Dr. Shah further maintains that the November 22, 1994, visit when he discovered Moss's second retinal detachment was not part of any course of treatment because it was only a yearly exam.

In response, Moss argues that limitations runs from the last day Dr. Shah treated Moss for eye problems and not the November 1992 surgery date. He contends that Dr. Shah engaged in a course of treatment for Moss's retinal problems from the November 1992 surgery date until July 24, 1995, the last time Dr. Shah saw Moss. Moss maintains that the November 1992 surgery removing the scleral buckle, coupled with the inadequate follow-up care and monitoring, caused his injury. Therefore, the two-year limitations period

did not begin to run until the last date Dr. Shah saw Moss. *See* TEX.REV.CIV. STAT. art. 4590i, § 10.01.

Additionally, Moss contends that Dr. Shah was not entitled to summary judgment on Moss's fraudulent-concealment claim because Dr. Shah's summary-judgment motion did not discuss this allegation. Moss also argues that applying section 10.01 to bar his claims violates the Texas Constitution's open courts provision. *See* TEX. CONST. art. I, § 13.

## III. APPLICABLE LAW

### A. LIMITATIONS FOR MEDICAL NEGLIGENCE CLAIMS

■ Article 4590i section 10.01 measures the limitations period for medical negligence claims from one of three dates: (1) the occurrence of the breach or tort, (2) the last date of the relevant course of treatment, or (3) the last date of the relevant hospitalization. TEX.REV.CIV. STAT. art. 4590i, § 10.01; *Husain v. Khatib*, 964 S.W.2d 918, 919 (Tex.1998). A plaintiff may not choose the most favorable date that falls within section 10.01's three categories. *Husain*, 964 S.W.2d at 919. Rather, if the date the alleged tort occurred is ascertainable, limitations must begin on that date. *Earle*, 998 S.W.2d at 886. And if the date is ascertainable, further inquiry into the second and third categories is unnecessary. *Husain*, 964 S.W.2d at 919; *Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex.1987).

■ However, there may be instances when the exact date the alleged tort occurred cannot be ascertained. The second category in section 10.01 contemplates such a situation "wherein the patient's injury occurs during a course of treatment for a particular condition and the only readily ascertainable date is the last day of treatment." *Kimball*, 741 S.W.2d at 372.

But before the last treatment date becomes relevant to determining when limitations begins, the plaintiff must establish a course of treatment for the alleged injury. *Rowntree v. Hunsucker*, 833 S.W.2d 103, 105 (Tex.1992). Moreover, if the defendant committed the alleged tort on an ascertainable date, whether the plaintiff established a course of treatment is immaterial because limitations begins to run on the ascertainable date. *Husain*, 964 S.W.2d at 919–20.

### B. FRAUDULENT CONCEALMENT

■ Fraudulent concealment in medical-negligence cases estops a health-care provider from relying on limitations to bar a plaintiff's claim. *Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex.1983). The plaintiff must show the health-care provider actually knew a wrong occurred, had a fixed purpose to conceal the wrong, and did conceal the wrong from the patient. *Earle*, 998 S.W.2d at 887. Fraudulent concealment tolls limitations until the plaintiff discovers the fraud or could have discovered the fraud with reasonable diligence. *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 531 (Tex.1997).

■ In *Borderlon*, this Court held that article 4590i section 10.01 "does not abolish fraudulent concealment as an equitable estoppel to the affirmative defense of limitations." *Borderlon*, 661 S.W.2d at 909. A plaintiff who asserts fraudulent concealment to avoid summary judgment on limitations grounds must raise a fact issue that would support this assertion. *Earle*, 998 S.W.2d at 888.

### C. THE TEXAS CONSTITUTION'S OPEN COURTS PROVISION

■ The Texas Constitution guarantees that persons bringing common-law claims will not unreasonably or arbitrarily be denied access to the courts. TEX. CONST. art. 1, § 13 ("All courts shall be

open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."); *Earle,* 998 S.W.2d at 889; *Jennings v. Burgess,* 917 S.W.2d 790, 793 (Tex.1996). A statute that unreasonably or arbitrarily abridges a person's right to obtain redress for injuries another person's harmful act causes is an unconstitutional due-course-of law violation. *Earle,* 998 S.W.2d at 889; *Jennings,* 917 S.W.2d at 793. Consequently, our Constitution's open courts provision protects a person from legislative acts that cut off a person's right to sue before there is a reasonable opportunity to discover the wrong and bring suit. *Neagle v. Nelson,* 685 S.W.2d 11, 12 (Tex.1985). And the Legislature cannot abrogate the right to bring a well-established common-law claim without showing that the statute's objectives and purposes outweigh denying the constitutionally guaranteed right of redress. *Weiner v. Wasson,* 900 S.W.2d 316, 318 (Tex.1995); *Sax v. Votteler,* 648 S.W.2d 661, 665–66 (Tex.1983).

To establish an open courts violation in an article 4590i case, a litigant must first show a cognizable, common-law claim that article 4590i's limitations provision restricts. *See Jennings,* 917 S.W.2d at 793. Then, the litigant must show the restriction is unreasonable or arbitrary when balanced against the statute's purpose and basis. *Jennings,* 917 S.W.2d at 793; *Sax,* 648 S.W.2d at 666. The limitations provision in article 4590i section 10.01 does not violate the open courts guarantee if the plaintiff had a reasonable opportunity to discover the alleged wrong and bring suit before the limitations period expired. *Earle,* 998 S.W.2d at 888; *Jennings,* 917 S.W.2d at 794.

### D. SUMMARY–JUDGMENT STANDARD OF REVIEW

The standard for reviewing a summary judgment under Texas Rule of Civil Procedure 166a(c) is whether the moving party carried its burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex. 1991). A defendant moving for summary judgment on a statute of limitations affirmative defense must prove conclusively that defense's elements. *Velsicol Chem. Corp.,* 956 S.W.2d at 530. In reviewing a trial court's summary judgment, we resolve all doubts against the movant, and we view the evidence in the light most favorable to the nonmovants. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999); *Lear,* 819 S.W.2d at 471. Additionally, in determining whether a disputed material fact issue exists, we take as true evidence favorable to the nonmovant. *American Tobacco Co., Inc. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997).

### IV. ANALYSIS

#### A. NEGLIGENT SURGERY CLAIM

The court of appeals determined that the second retinal detachment occurred some time between the November 1992 surgery and Moss's yearly office visit in November 1994. 7 S.W.3d at 692. Consequently, the court of appeals concluded that the tort date is unascertainable, and thus, it applied section 10.01's course-of treatment completion doctrine to determine the date when limitations began to run. 7 S.W.3d at 692. We disagree with the court of appeals' analysis.

Moss's petition alleges two claims: negligent surgery and negligent follow-up treatment. The date Dr. Shah removed the scleral buckle is known—November 28, 1992. Thus, the court of appeals errone-

ously applied a course-of-treatment analysis to conclude that limitations does not bar Moss's negligent-surgery claim. *See* 7 S.W.3d at 692.

■ When the date of the alleged tort or breach is ascertainable, limitations begins to run from that date. *Husain*, 964 S.W.2d at 919; *Kimball*, 741 S.W.2d at 372. This rule applies even if the exact date on which the injury occurred is unknown. *Husain*, 964 S.W.2d at 919. If the date the doctor's alleged negligence took place can be ascertained, then there are no doubts to resolve and we must measure limitations from that date. *Husain*, 964 S.W.2d at 919. Here, because the alleged negligent-surgery tort date is ascertainable, and because Moss did not file suit within two years of that date, article 4590i section 10.01 bars Moss's negligent surgery claim.

### B. NEGLIGENT FOLLOW-UP TREATMENT CLAIM

The court of appeals determined that the summary-judgment evidence demonstrated a course of treatment that Dr. Shah administered for Moss's retina problems. 7 S.W.3d at 693. It further concluded that, because there was some evidence that the November 1994 visit related to the continuing relationship between Dr. Shah and Moss to treat Moss's retinal problems, there was a fact issue about when the course of treatment ended. 7 S.W.3d at 694. It thus rejected Dr. Shah's argument that the last date on which limitations could begin for Moss's negligent follow-up treatment claim was October 21, 1993, the last recheck visit. 7 S.W.3d at 694. Again, we disagree with the court of appeal's analysis.

The court of appeals dismissed Dr. Shah's argument that the same analysis we applied to the plaintiffs' claims in *Husain* and *Rowntree* applies to Moss's negligent follow-up treatment claim. 7 S.W.3d at 694. Instead, it concluded these cases are distinguishable because they involved an alleged duty to perform specific tests during specific office visits rather than an alleged duty to monitor or continue treatment. 7 S.W.3d at 694. The dissent also concludes that *Husain* and *Rowntree* do not apply for the same reason. 67 S.W.3d at 849. But the court of appeals' and dissent's distinction ignores the rule applied in those cases; that is, if the date the alleged tort or breach took place is ascertainable, a course-of-treatment analysis is immaterial to determining when limitations begins to run.

In *Rowntree*, the plaintiff alleged that the doctor did not diagnose, monitor, and otherwise properly treat her occluded artery when he treated and prescribed medication for her high blood pressure. 833 S.W.2d at 104. This Court had to determine if the plaintiff's taking the prescribed medication created a course of treatment absent any other office visits or medical services. *Rowntree*, 833 S.W.2d at 104. We concluded there was no course of treatment because the plaintiff's allegation was her doctor breached a duty to perform certain exams that would have detected the occluded artery. *Rowntree*, 833 S.W.2d at 108. Thus, we held that limitations began to run on the last date the doctor actually saw the plaintiff and had the opportunity to perform his alleged duties. *Rowntree*, 833 S.W.2d at 108.

Further, in *Husain*, the plaintiff alleged that her doctor was negligent in not performing certain medical exams, after she complained about a lump in her breast, to detect her breast cancer. 964 S.W.2d at 919. We concluded that the dates on which the doctor's alleged negligence took place were readily ascertainable because the doctor did not perform the necessary exams during specific office visits. *Hu*

*sain,* 964 S.W.2d at 919. Moreover, we held that, because the doctor's alleged negligence occurred on ascertainable dates, "it [was] therefore immaterial whether [the doctor] established a course of treatment for [the patient's condition]." *Husain,* 964 S.W.2d at 919.

This Court's holding in *Kimball* is also instructive. 741 S.W.2d at 372. In that case, the plaintiff was admitted into the hospital for chest pains. His surgery was postponed, however, because the defendant doctor was unable to intubate and the plaintiff suffered respiratory and cardiac failure. After this incident, the doctor performed no other procedures on the plaintiff and did not see him again though the plaintiff stayed in the hospital for six more days. *Kimball,* 741 S.W.2d at 372. The plaintiff sued the doctor for negligence two years after the last day he stayed in the hospital. This Court affirmed the trial court's summary judgment for the doctor on limitations grounds, concluding that the precise date of the alleged tort was ascertainable from the case's facts. That is, the alleged tort occurred on the only date the doctor had contact with the plaintiff. Accordingly, we held that the plaintiff could not invoke the second or third categories in section 10.01 to measure the limitations period and, therefore, the claims were time-barred. *Kimball,* 741 S.W.2d at 372.

That a course-of-treatment analysis is immaterial if the tort date is ascertainable is further exemplified in *Chambers v. Conaway,* a case upon which Moss relies. *See* 883 S.W.2d 156 (Tex.1993). There, the plaintiff alleged that her doctor did not diagnose her breast cancer despite her complaint about a lump in her breast and her numerous visits to the doctor for ailments unrelated to that complaint. *Chambers,* 883 S.W.2d at 159. The plaintiff presented summary-judgment evidence establishing that her doctor had a duty to perform follow-up tests and to monitor any conditions of which he had notice—including a lump in the plaintiff's breast. *Chambers,* 883 S.W.2d at 158. We concluded that the doctor allegedly breached this duty on the specific dates when the plaintiff visited the doctor. *Chambers,* 883 S.W.2d at 159. Because the tort dates were ascertainable, we refused to apply a course-of-treatment analysis, and we held that limitations began to run from the date the plaintiff last saw the doctor. *Chambers,* 883 S.W.2d at 159; *see also Bala,* 909 S.W.2d at 892 (holding that doctor could have breached duty to conduct follow-up medical tests only when he examined the plaintiff on specific dates and thus limitations ran from the plaintiff's last office visit).

Here, Moss's expert's affidavit opines that Dr. Shah had a duty to provide careful follow-up treatment on a weekly or monthly basis after he surgically removed the scleral buckle in November 1992. We must take this evidence as true. *See American Tobacco Co.,* 951 S.W.2d at 425. Accordingly, we assume that the proper standard of care was as Moss's expert opined—weekly or monthly follow-up visits after the November 1992 surgery. Applying the duty the alleged standard of care imposes, we would conclude that limitations began to run each time Dr. Shah saw Moss, beginning with the first post-surgery visit in November 1992. This is because Dr. Shah breached the alleged duty to provide weekly or monthly follow-up treatment on every date he actually saw Moss. *See Husain,* 964 S.W.2d at 919; *Rowntree,* 833 S.W.2d at 108. But we view the summary-judgment evidence in the light most favorable to Moss. *See KPMG Peat Marwick,* 988 S.W.2d at 748; *Lear,* 819 S.W.2d at 471. Therefore, the last date Dr. Shah could have ordered

additional weekly or monthly office visits was during the last recheck visit on October 21, 1993.

The court of appeals and the dissent arrive at a contrary conclusion and hold that the yearly exam in November 1994 was part of Dr. Shah's course of treatment for Moss's retina problems. 67 S.W.3d at 848, 7 S.W.3d at 694. However, the court of appeals' and the dissent's course-of-treatment analysis ignores the rule that, if the date the alleged negligence occurred is readily ascertainable, whether a course of treatment existed is immaterial. *Husain*, 964 S.W.2d at 919–20; *Chambers*, 883 S.W.2d at 159. And it ignores that it is the breach of the duty the alleged standard of care imposes—weekly or monthly follow-up treatment—which, when applied to this case's facts, dictates when limitations began to run. *See Husain*, 964 S.W.2d at 919–20; *Chambers*, 883 S.W.2d at 159. Moss's medical records demonstrate that Moss's last "recheck" visit was on October 23, 1993, and Dr. Shah did not diagnose the second detached retina until Moss visited Dr. Shah more than twelve months later on November 22, 1994. Because of the standard of care alleged, the last date Dr. Shah could have breached the alleged duty to provide weekly or monthly visits was on October 23, 1993. Consequently, the November 22, 1994 visit is immaterial to our statute-of-limitations analysis.

Additionally, the dissent incorrectly suggests that *Kimball's* language supports the conclusion that limitations runs from the completion of Moss's alleged course of treatment. 67 S.W.3d at 848. But that language expressly states that article 4590i's course-of-treatment limitations prong applies only if "the patient's injury occurs during a course of treatment for a particular condition *and* the only readily ascertainable date is the last day of treat-

ment." *Kimball*, 741 S.W.2d at 372 (emphasis added). Here, because we must assume Moss's alleged standard of care is true and apply the duty that arises from it to the facts, we *can* identify an ascertainable tort date—October 23, 1993. Therefore, we do not apply a course-of-treatment limitations analysis.

Similarly, the dissent mistakenly contends that *Chambers* supports the notion "that, if the applicable standard of care requires follow-up treatment for a particular condition, a physician may breach an ongoing duty to monitor that condition without doing so on any single date." 67 S.W.3d at 850. But the dissent's conclusion disregards that we declined to apply a course-of-treatment analysis in *Chambers* because, based on the duty the plaintiff alleged, we could ascertain the tort date. *Chambers*, 883 S.W.2d at 159. Thus, even if the standard of care requires an ongoing duty to monitor, we do not apply the course-of-treatment limitations provision if we can ascertain the tort date.

Accordingly, we conclude that the last date on which Dr. Shah could have breached his alleged duty to provide more frequent follow-up treatment was on October 23, 1993. Because Moss filed suit in June 1996, more than two years after Dr. Shah allegedly neglected to provide the proper follow-up care, limitations bars this claim. *See* Tex.Rev.Civ. Stat. art. 4590i, § 10.01.

## C. Fraudulent Concealment

█ Moss argues that limitations does not bar his claims because Dr. Shah fraudulently concealed the negligent nature of the November 1992 surgery and the follow-up treatment. Moss claims that when Dr. Shah diagnosed the second retinal detachment in November 1994, Dr. Shah actually knew he committed malpractice in removing the scleral buckle. And Moss contends that Dr. Shah's explanations

about Moss's blurred vision after the surgery for the second retinal detachment were designed to conceal this negligence. Moreover, Moss argues that Dr. Shah's summary-judgment motion did not consider his fraudulent-concealment allegations, and therefore, the court of appeals' decision to remand the case should stand.

Moss's contention that Dr. Shah's summary-judgment motion did not consider his fraudulent-concealment claim is without merit. To avoid summary judgment on limitations grounds, Moss must have raised a fact issue to support his fraudulent-concealment assertion. *See Earle*, 998 S.W.2d at 888; *Baptist Mem'l Hosp. Sys. v. Arredondo*, 922 S.W.2d 120, 122 (Tex. 1996). Moss had to raise a fact issue showing Dr. Shah knew Moss had been wronged and concealed that fact to deceive him. *See Earle*, 998 S.W.2d at 888.

Here, the only summary-judgment evidence Moss relies upon to support his fraudulent-concealment allegation is his affidavit and parts of his deposition testimony. The affidavit, however, does not allege any facts suggesting that Dr. Shah knew, after the November 1992 surgery, that he was negligent and that he concealed this known wrong to deceive Moss. The affidavit only states that Dr. Shah told Moss, before the November 1992 surgery, that Moss's eye had healed and the scleral buckle could be removed. Moreover, Dr. Shah's deposition testimony indicates that before the November 1992 surgery, Dr. Shah told Moss about the risks in removing the scleral buckle. Both the affidavit and the deposition testimony indicate that after the second retinal-detachment surgery in 1994, Dr. Shah told Moss that he needed time to heal and his blurred vision should improve. But this evidence does not show, or even suggest, that Dr. Shah made these assurances to conceal a known wrong or to deceive Moss. *See Earle*, 998

S.W.2d at 889 (holding affidavit stating that the doctor told the patient surgery would improve his condition and was needed for reasons that later showed not to be true was not evidence that the doctor knew the statements were false when he made them and intended to conceal a known wrong).

Accordingly, Moss's summary-judgment evidence did not raise a fact issue demonstrating that Dr. Shah knew about the alleged negligence and that he concealed this wrong to deceive Moss. Because Moss did not raise a fact issue to support his fraudulent-concealment claim, the limitations period was not tolled and limitations bars Moss's claims. *See Earle*, 998 S.W.2d at 889.

### D. OPEN COURTS CHALLENGE

■ Moss also argues that our Constitution's open courts provision precludes article 4590i section 10.01 from barring his negligence claims. *See* TEX. CONST. art. I, § 13. Moss did not learn about the second retinal detachment until almost two years after Dr. Shah removed the scleral buckle. He then waited an additional seventeen months before filing suit. But Moss contends that the two-year limitations period should not bar his claims, because he did not know there was a causal connection between Dr. Shah's conduct and Moss's eventual blindness until after his final office visit with Dr. Shah in July 1995.

Moss's negligence claims against Dr. Shah reflect well-established medical malpractice common-law claims. *See Jennings*, 917 S.W.2d at 793. We have already concluded that article 4590i section 10.01 bars these claims. Therefore, it was Moss's burden to raise a fact issue demonstrating that he did not have a reasonable opportunity to discover the alleged wrong before the limitations period expired so

that the open courts guarantee applies. *See Earle*, 998 S.W.2d at 889.

The summary-judgment evidence shows Moss knew, even before the November 1992 surgery, that removing the scleral buckle could result in another detached retina. It also establishes that Moss had post-surgery vision problems indicating the possibility of another detached retina. The summary-judgment evidence further demonstrates that Moss continued to have vision problems from October 1993, when Moss had his last recheck visit and limitations began to run on his negligent follow-up treatment claim, to November 1994, when Dr. Shah diagnosed the second retinal detachment. And those vision problems remained even after the second retinal-detachment surgery. Accordingly, the summary-judgment evidence demonstrates Moss had a reasonable opportunity to discover the alleged wrong and bring suit within the two year limitations period.

 Additionally, even if we take as true Moss's assertion that he could not have sued within the two-year limitations period because he did not discover Dr. Shah's negligence until his last office visit in July 1995, the open courts provision does not save Moss's claims. A plaintiff may not obtain relief under the open courts provision if he does not use due diligence and sue within a reasonable time after learning about the alleged wrong. *Voegtlin v. Perryman*, 977 S.W.2d 806, 812 (Tex.App.-Fort Worth 1998, no pet.); *Fiore v. HCA Health Servs. of Tex., Inc.*, 915 S.W.2d 233, 237 (Tex.App.-Fort Worth 1996, writ denied).

Here, the summary-judgment evidence shows Moss knew about his alleged injury, the second detached retina resulting in Moss's loss of sight, at least seventeen months before he brought suit. Moss offers no explanation, other than Dr. Shah's alleged fraudulent concealment, about why he delayed in bringing suit. And, we have already rejected Moss's fraudulent-concealment claim. Accordingly, we conclude that, as a matter of law, Moss did not file suit within a reasonable time after discovering his injury. *See Fiore*, 915 S.W.2d at 237 (holding open courts provision did not save claims because the plaintiffs waited a year, without explanation, to bring suit after discovering the doctor's misdiagnosis); *see also Hall v. Dow Corning Corp.*, 114 F.3d 73, 77 (5th Cir.1997) (applying Texas law to hold that a fifteen-month delay was excessive as a matter of law).

Moss did not raise a fact issue establishing that he did not have a reasonable opportunity to discover the alleged wrong and bring suit within the limitations period or that he sued within a reasonable time after discovering the alleged wrong. *See Earle*, 998 S.W.2d at 889. Thus, the open courts provision does not apply to save Moss's time-barred negligence claims.

## V. CONCLUSION

We conclude that article 4590i section 10.01 bars Moss's negligent surgery claim and negligent follow-up treatment claim. Dr. Shah's alleged negligence occurred on ascertainable dates and, therefore, the court of appeals improperly applied a course-of-treatment analysis. Additionally, we conclude that Moss did not raise a fact issue to support his fraudulent-concealment allegation or his contention that our open courts provision saves his negligence claims. We therefore reverse the court of appeals' judgment and render judgment for Dr. Shah.

Justice O'NEILL filed a dissenting opinion, in which Chief Justice PHILLIPS, Justice Enoch, and Justice HANKINSON joined.

Justice O'NEILL, joined by Chief Justice PHILLIPS, Justice ENOCH, and Justice HANKINSON, dissenting.

Moss was referred by another opthalmologist to Dr. Shah in 1991 for the specific purpose of treating Moss's detached retina. To keep the retina in place, Shah surgically installed a scleral buckle. Moss experienced vision problems after the surgery, and Shah surgically removed the buckle in November 1992. Shah saw Moss five times between December 1992 and October 1993, confirming on each occasion that the retina was in place. But by the time Shah saw Moss on November 22, 1994, the retina had detached. Despite further surgery, Shah was unable to prevent Moss from losing sight in his right eye. Moss gave notice of suit on April 19, 1996.

The Court concludes that a course-of-treatment limitations analysis does not apply to Moss's negligent follow-up claim because the date of Shah's negligent follow-up is readily ascertainable, that being October 21, 1993, the last date on which Dr. Shah could have scheduled a recheck visit within the alleged standard of care. But the Court's reasoning ignores the summary judgment proof that the November 22, 1994 exam was a part of Shah's follow-up treatment for Moss's retinal condition; thus, the Court starts limitations running on Moss's alleged negligent follow-up claim while the follow-up treatment itself is ongoing. Even more troubling is the anomalous result that the Court's reasoning produces—*limitations began to run on Moss's claim before he suffered an injury.*

To the extent Moss alleges that Shah negligently performed the buckle-removal surgery, I agree with the Court that limitations has run because the date of the breach or tort is readily ascertainable. But considering the nature of Moss's negligent follow-up claim and the facts presented, I cannot agree that the date of this alleged breach or tort is readily ascertainable. Accordingly, limitations began to run from the date the course of treatment that is the subject of Moss's claim was completed. Because Shah did not prove as a matter of law that Moss's course of treatment ended more than two years before suit was filed, summary judgment in Shah's favor was improper, as the court of appeals held. 7 S.W.3d 690, 695. Because the Court holds otherwise, I respectfully dissent.

## I Statute of Limitations

The Medical Liability and Insurance Improvement Act provides that a medical negligence suit must be filed

> within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed.

TEX.REV.CIV. STAT. ANN. art. 4590i, § 10.01. Thus, the Act provides that the statute of limitations for medical malpractice claims runs from one of three dates: (1) when the breach or tort occurs; (2) when the health care treatment that is the subject of the claim is completed; or (3) when the hospitalization for which the claim is made ends. *See Earle v. Ratliff,* 998 S.W.2d 882, 886 (Tex.1999).

A plaintiff may not simply choose which of these three dates is the most favorable. *See id.* If the date of the alleged negligence can be ascertained, limitations must run from the date of the tort whether or not the patient continues to see the doctor. *See id.* On the other hand, if the injury occurs during a course of treatment for a particular condition and the date of the alleged breach or tort is not readily ascertainable, limitations runs from the date the

course of treatment ends. *See Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex.1987). Which limitations period applies depends upon the facts of the case and the nature of the claims asserted. *See Rowntree v. Hunsucker*, 833 S.W.2d 103, 106 (Tex. 1992).

## II Standard of Review

As a defendant moving for summary judgment on the affirmative defense of limitations, Shah bore the burden of conclusively establishing his defense. *See Jennings v. Burgess*, 917 S.W.2d 790, 793 (Tex.1996). Unless the summary-judgment record shows as a matter of law that the limitations period began and ended before Moss initiated his suit, Shah has not met this burden. *See Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983). We review the record in the light most favorable to the non-movant, Moss, resolving any factual disputes in his favor. *See Chambers v. Conaway*, 883 S.W.2d 156, 157 (Tex.1993).

## III Discussion

Under the facts presented, the exact date of the alleged breach or tort is not ascertainable. Shah acknowledges that he cannot pinpoint the date between October 1993 and November 1994 when Moss's right retina re-detached. But more importantly, for limitations purposes, Shah did not conclusively establish a single, discrete date when he allegedly breached his duty to provide medically acceptable care, because Moss's expert characterizes the entirety of Shah's treatment as a breach of the standard of care. This situation is precisely what the course-of-treatment doctrine was intended to cover. *See Husain v. Khatib*, 964 S.W.2d 918, 919 (Tex. 1998).

The Court concludes that a course-of-treatment analysis is immaterial because Shah breached a duty to provide follow-up treatment on a readily ascertainable date, October 21, 1993, the last date expressly labeled a "re-check" visit in Shah's records. In reaching that conclusion, the Court assumes that Shah could only have breached a duty to schedule follow-up visits to monitor Moss's retinal condition on the dates of Moss's office visits, relying on *Husain, Bala, Kimball, Chambers*, and *Rowntree*. *See Husain*, 964 S.W.2d 918; *Bala v. Maxwell*, 909 S.W.2d 889 (Tex. 1995); *Chambers*, 883 S.W.2d 156; *Rowntree*, 833 S.W.2d 103; *Kimball*, 741 S.W.2d 370. That reliance is misplaced.

In *Husain, Bala*, and *Rowntree*, the plaintiffs alleged that the defendant doctors breached duties to perform tests or take specific actions that could have prevented or diagnosed illness; the plaintiffs complained, essentially, that the doctors were negligent in failing to take diagnostic measures that would have revealed the need to establish a course of treatment for the illness that was the subject of the plaintiffs' claims. *See Husain*, 964 S.W.2d at 920; *Bala*, 909 S.W.2d at 891–92; *Rowntree*, 833 S.W.2d at 108. In each case, the plaintiff was already suffering the malady that should have been discovered had the test been timely given. *See id.* Thus, the tort was complete. Because a doctor's failure to order a test or perform a specific evaluation on a particular date is readily ascertainable, and because the defendants could have breached a duty only when they had an opportunity to perform the examinations, the limitations period began to run each time the defendants failed to order tests or perform evaluations. *See id.*

Here, though, Moss has not alleged that Shah failed to diagnose an existing condition. Instead, Moss alleges that Shah, by removing the buckle when he did, assumed a standard of care indicating a different course of follow-up treatment. Shah alleg-

edly breached this standard of care, causing Moss's injury, by failing to perform appropriate follow-up to monitor Moss's retinal condition after the buckle was removed. *Cf. Gross v. Kahanek,* 3 S.W.3d 518, 521 (Tex.1999) (noting that medical standards may require a physician who prescribes powerful medication to monitor closely the patient's reaction to the medication). Because Shah's inappropriate follow-up treatment was ongoing and constituted the breach, the precise date of the tort alleged in this case is not readily ascertainable. When, as here, (1) the date of the alleged breach or tort is not readily ascertainable, (2) a continuous course of treatment has been established with respect to the specific condition that forms the basis of the lawsuit, and (3) the standard of care requires periodic follow-up examinations for that condition, the statute of limitations begins to run when the course of treatment is completed. *See Rowntree,* 833 S.W.2d at 106 (citing *Nykorchuck v. Henriques,* 78 N.Y.2d 255, 573 N.Y.S.2d 434, 577 N.E.2d 1026, 1029 (1991)).

The Court's reliance on *Kimball* is similarly misplaced. In *Kimball,* the plaintiff was taken to surgery on March 11, 1982, but the anesthesiologist defendant had trouble intubating him and the surgery was postponed. 741 S.W.2d at 371. The defendant had no further contact with the plaintiff, who was discharged from the hospital on March 17, 1982. *Id.* Although it was undisputed that the alleged breach or tort causing the injury occurred on March 11th, plaintiff argued that limitations did not begin to run until the last day of his hospitalization. *Id.* at 372. We rejected Kimball's argument because the statute expressly limited that option to claims based upon the hospitalization itself, rather than discrete, identifiable, negligent acts. *Id.* But we also noted that the statutory provision allowing limitations to run from the completion of medical or health care treatment contemplates a situation like the present one, in which "the patient's injury occurs during a course of treatment for a particular condition and the only readily ascertainable date is the last day of treatment." *Id.*

Neither does *Chambers* support the Court's analysis. There, the plaintiff sued her doctor for failing to diagnose her breast cancer. 883 S.W.2d at 157. She presented summary-judgment proof that the doctor, as her primary care physician, had a continuing duty to monitor and treat complaints of which he had notice, including her breast lump. *Id.* at 158. Because the physician had continually breached this duty up to and including her final appointment, and the patient had sued within two years of that date, we held that the claim was not time-barred. *Id.* Thus, *Chambers* actually supports the notion that, if the applicable standard of care requires follow-up for a particular condition, a physician may breach an ongoing duty to monitor that condition without doing so on any single date, as Moss alleges in this case.

The Court's analysis is also flawed because it applies an inappropriate review standard. We must review the summary-judgment record and resolve any factual disputes in the non-movant's favor. *Chambers,* 883 S.W.2d at 157. The Court concludes that the court of appeals erred in applying a course-of-treatment analysis because "Moss's medical records demonstrate that Moss's last 'recheck' visit was on October 23, 1993, and Dr. Shah did not diagnose the second detached retina until Moss visited Dr. Shah more than twelve months later on November 22, 1994." 67 S.W.3d at 845. But viewed in the light most favorable to Moss, the summary-judgment evidence creates a fact issue whether the November 22, 1994 visit was part of Moss's retinal course of treatment.

Moss was specifically referred to Shah to treat his retinal condition, and the buckle-removal surgery and any necessary follow-up were part of the course of treatment for that condition. Moss went to other eye specialists about problems with his visual acuity and his eye muscles, but the nature of the specific problem for which Shah treated Moss—retinal detachment—never changed.

I agree that neither the mere continuing relationship between a physician and a patient nor the continuing nature of a diagnosis will alone support a finding that a course of treatment was established for a particular condition. *Rowntree,* 833 S.W.2d at 105–06. If an examination does not relate to treatment of the condition that gives rise to the litigation but is "discrete and complete," it does not constitute continuous treatment. *Nykorchuck,* 573 N.Y.S.2d 434, 577 N.E.2d at 1028. Here, though, Shah testified that Moss continued to see Shah for "routine periodic checkups" after the buckle-removal surgery. And, contrary to the Court's conclusion that the November 22, 1994 visit was not a recheck for the buckle-removal surgery, Shah's notes from Moss's October 1993 recheck visit specifically note that Moss's condition should be rechecked in one year. The November 1994 visit was originally scheduled for October 20, 1994, almost exactly one year after the October 21, 1993 visit. Although the Court implies that the November 1994 appointment did not relate to a follow-up course of treatment, the summary-judgment posture of this case requires us to resolve this dispute in Moss's favor.

## IV Conclusion

Because Shah did not conclusively establish that the November 1994 visit was "discrete and complete" and unrelated to a follow-up course of treatment for Moss's retinal detachment, summary judgment in his favor was improper. Accordingly, the court of appeals' judgment should be affirmed. Because the Court concludes otherwise, I respectfully dissent.