Majority and Dissenting Opinions filed April 8, 2004









Majority and Dissenting Opinions filed April 8, 2004.

 

                                                                                                                                                            

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00624-CV

____________

 

BESSIE WINSTON AND
JAMES WINSTON,
Appellants

 

V.

 

WILLIAM H.
PETEREK, M.D.,
Appellee

 



 

On Appeal from the 10th
District Court

Galveston County, Texas

Trial Court Cause No. 02CV0006-A

 



 

D I S S E N T I N G   O P I N I O N








I respectfully disagree with the majority=s conclusion that
the claims of the Winstons are barred by limitations.  As the majority noted, Texas law imposes a
two-year statute of limitations on health-care claims.  Delgado v. Burns, 656 S.W.2d 428, 429
(Tex. 1983) (per curiam).  Importantly,
if the date of the alleged tort or breach is ascertainable, the limitations
period runs from that date, and the ascertainable date controls regardless of whether
there was an established course of treatment. 
Shah v. Moss, 67 S.W.3d 836, 841 (Tex. 2001).  In his motion for summary judgment, Dr.
Peterek argued he was entitled to relief on the sole ground that April 3, 1998,
was the ascertainable date of breach because it was the day Bessie Winston last
visited his office.  Because he received
notice of the Winstons= claims on October 20, 2000Cmore than two
years after April 3, 1998CDr. Peterek contended the claims of the
Winstons were barred by the statute of limitations.  In order to prevail, Dr. Peterek had the
burden to prove that the ascertainable date of breach was prior to October 20,
1998.  Delgado v. Burns, 656 S.W.2d
428, 429 (Tex. 1983) (per curiam).  I
believe Dr. Peterek failed to meet this burden.

In response to Dr. Peterek=s motion for
summary judgment, the Winstons attached an affidavit from their expert, Dr.
Arthur Hadley, who stated in relevant part as follows:

Additionally, on April 13, 1998,
Mrs. Winston complained of nausea, vomiting and headache . . . . Dr.
Peterek renewed Mrs. Winston=s Procardia prescription three times after his last
examination.  The first was on August 31,
1998, the second on February 9, 1999 and the third was on October 5, 1999 . . .
. According to Mrs. Winston=s daughters Mrs. Winston complained to Dr. Peterek of
other headaches that were located in the area of her temple to the back of
her head with pain radiating down her neck to her shoulders.  The headaches were described as the worst she
had ever experienced.  Even after
those warnings Dr. Peterek=s treatment of Mrs. Winston=s hypertension continued to be the
prescriptive medicine Procardia.  

 

(emphasis added). 
The expert further opined that nausea, vomiting, and headaches are
symptoms of subarachnoid hemorrhaging. 
Dr. Hadley further stated that Dr. Peterek should have determined the
etiology of those symptoms as is dictated by the standard of care and practice
for the treatment and management of hypertension.  








The affidavit of Dr. Hadley indicates that
on April 13, 1998, Mrs. Winston complained to Dr. Peterek of symptoms that
could be signs of subarachnoid hemorrhaging. 
The testimony also suggests that after April 13, 1998, Mrs. Winston
complained of other headaches, and despite the complaints, Dr. Peterek
continued to prescribe Procardia.  The
affidavit does not provide a date for the additional conversation or
conversations between Mrs. Winston and Dr. Peterek.  From the context of the paragraph, the
conversations appear to have taken place sometime between April 14, 1998, and
October 5, 1999.  According to the record
before us, Dr. Peterek did not make any objections to the affidavit nor did he
offer any evidence to provide a time-line for the purported conversations.  Dr. Peterek responded that his last office
visit with Mrs. Winston was on April 3, 1998.








Dr. Peterek and the majority rely on Shah,
Bala v. Maxwell, 909 S.W.2d 889 (Tex. 1995), and Rowntree v.
Hunsucker, 833 S.W.2d 103 (Tex. 1992), to conclude that the date of Mrs.
Winston=s last office
visit is the ascertainable date of breach. 
I do not find that the reasoning of those cases necessitates the
majority=s conclusion.  In concluding a patient=s negligent
follow-up treatment claim was barred by the statute of limitations, the Texas
Supreme Court found in Shah Athat the dates on
which the physician=s alleged negligence took place were
readily ascertainable because the physician did not perform the necessary exams
during specific office visits.@  67 S.W.3d at 843B45.  The court found that the last date the
physician could have breached his alleged duty to provide follow-up care was
the last day he actually saw the patient because Athe last time [he]
could have ordered additional weekly or monthly office visits was during the
last recheck visit . . . .@  Id. at 844B45.[1]  In dismissing another patient=s claim that her
physician breached a duty to perform proper examinations that would have
detected occluded arteries, the court determined in Rowntree the statute
of limitations began to run Afrom the date of
the alleged wrongful act.@ 
833 S.W.2d at 108.  The court
found that the date of the alleged wrongful act was ascertainable from the
facts of the case because the physician Acould have
breached this duty only on those occasions when he had opportunity to perform
such examinations.@  Id.  The court noted that, although the patient
had refilled her hypertension medication at the pharmacy within the statutory
period, the physician had provided no regular examinations or Aother services@ during that
time.  Id.  In Bala, the court held the statute of
limitations barred the patient=s claim because
the last time the patient had seen the physician prior to the visit that led to
her diagnosis of breast cancer was more than two years prior to the patient=s filing of her
lawsuit.  909 S.W.2d at 891B92.  Again, the court held that the physician
could only have been negligent when he had an opportunity to conduct follow-up
treatment.  Id. at 892.

These cases stand for the proposition that
an ascertainable date of breach in a negligent follow-up treatment case is the
date on which the physician could have conducted follow-up procedures, or more
precisely, the last date of treatment. 
In the aforementioned-cases and likely in most cases, this date is the
date of the patient=s last office visit.  However, to find that a physician can treat a
patient only in person is to overlook the undeniable fact that physicians can
and do treat patients in many ways, using a variety of mediums.  

In this case, the Winstons alleged a
physician-patient relationship existed between Dr. Peterek and Mrs. Winston,
and sued Dr. Peterek, claiming that he failed to, among other things, properly
perform necessary medical treatment, examine Mrs. Winston upon presentment of
her symptoms, and conduct proper diagnostic procedures in connection with those
symptoms.  The Winstons= expert opined
that Dr. Peterek had a duty to provide careful follow-up treatment when Mrs.
Winston made additional complaints of headaches, and that the standard of care
dictated further examination of her symptoms. 
We must take this evidence as true. 
See Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex.
1997).  Applying the duty the alleged
standard of care imposes, I would conclude that the statute of limitations
began to run on the date of the last alleged wrongful actCthe last day that
Dr. Peterek treated Mrs. Winston and could have provided follow-up
treatment.  The Winstons= expert appears to
allege that Mrs. Winston discussed problems associated with her hypertension
with Dr. Peterek after April 13, 1998, and possibly during the statutory
period.  There is some evidence that Mrs.
Winston discussed her complaints of headaches with Dr. Peterek or his staff
after her last office visit, and that Dr. Peterek may have failed to establish
appropriate follow-up treatment or order additional office visits at that
time.  Viewing the summary-judgment
evidence in the light most favorable to the Winstons, Dr. Peterek failed to
establish under the facts of this case that Mrs. Winston=s last office
visit was the last date he had the opportunity to provide follow-up treatment
for her or that her last office visit was the last day of treatment.








I conclude that, because Dr. Peterek, in
moving for summary judgment on the affirmative defense of limitations, failed
to establish as a mater of law that the statute of limitations barred the suit
against him, he is not entitled to summary judgment.  For these reasons, I dissent.

 

 

 

 

/s/      Leslie Brock Yates

Justice

 

 

 

 

Judgment
rendered and Majority and Dissenting Opinions filed April 8, 2004.

Panel
consists of Justices Yates, Anderson, and Hudson.

 











[1]  The dissent in
Shah disagreed with the majority=s
finding of an ascertainable date of breach in a negligent follow-up treatment
claim.  67 S.W.3d at 848 (O=Neill, J., dissenting).  Justice O=Neill
pointed out that finding an ascertainable date of breach in a follow-up
treatment case led to the anomalous result that the limitations period began to
run on the patient=s claim before he suffered an injury.  Id. 
In this case, the result is the same.