# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00259-CV

**Jose Guadalupe Gonzales Jr., Appellant**

**v.**

**Rebeca Gonzales Reyes, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. D-1-GN-09-003600, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Jose Guadalupe Gonzales Jr. filed suit against his sister, Rebeca Gonzales Reyes, to try title to property previously owned by their parents. Gonzales alleged that a Warranty Deed conveying the property to Reyes had been forged. Reyes asserted an affirmative defense based on the statute of limitations, and the trial court granted summary judgment in Reyes's favor on that basis. On appeal, Gonzales contends that the trial court erred by (1) sustaining Reyes's objection to his summary-judgment evidence, and (2) granting Reyes's motion for summary judgment. We will affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Gonzales and Reyes's father executed a will in 1996 that left his interest in real property located in Austin, Texas, to their mother. Their father died the following year, and their mother died in 1999. At that time, Gonzales's son began living on the property and remained there

until 2001. Gonzales alleged that Reyes "ejected" his son from the property in 2001. Reyes claims to have taken possession of the property in 2002.

In 2001, a warranty deed conveying the property to Reyes to hold in trust for her daughter was recorded in Travis County, Texas. The deed indicates that both of Reyes's parents signed it before a notary in 1991. The parties dispute the validity of this deed.

In 2009, Gonzales brought this suit against Reyes, asserting that the deed was "void" because their parents' signatures "were forged by defendant or with her knowledge and consent." Gonzales alleged that Reyes "had wrongfully entered" and "continues to withhold possession" of property that Gonzales was "legally entitled" to possess as owner of a "one-eighth (1/8) undivided interest." Gonzales sought a judgment declaring the deed invalid, "judgment for title to and possession of" the property, damages plus prejudgment interest for the rental value of the premises during his sister's occupation, exemplary damages, costs, and prejudgment interest.

Reyes answered and asserted as an affirmative defense that her brother's claims "are barred by the applicable statute of limitations." Tex. Civ. Prac. & Rem. Code Ann. § 16.025 (West 2002). Reyes then moved for summary judgment on that ground.

Gonzales responded by arguing that the statute's limitations period (1) did not apply to forged deeds, and (2) could not have expired because Reyes failed to pay taxes on the property. As summary-judgment evidence, Gonzales filed the affidavit of a handwriting analyst "whose opinion supported" his claim that the "deed was forged." Reyes objected to the affidavit on the ground that it lacked foundation. The trial court sustained Reyes's objection and gave both parties leave to file supplemental summary-judgment evidence. Both parties filed supplemental

2

summary-judgment evidence, after which the trial court granted Reyes's motion for summary judgment. This appeal followed.

## STANDARDS OF REVIEW

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Summary judgment is proper when the moving party carries its burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Shah v. Moss*, 67 S.W.3d 836, 842 (Tex. 2001). Defendants moving for summary judgment on a statute of limitations affirmative defense must prove conclusively all elements of that defense. *Shah*, 67 S.W.3d at 842. In reviewing a summary judgment, we resolve all doubts against the movant and view evidence in the light most favorable to the nonmovants. *Id.* To determine whether a disputed material fact issue exists, we take as true any evidence favorable to the nonmovant. *Id.*

We use the abuse-of-discretion standard to review a trial court's rulings on objections to admissibility of evidence. *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 638 (Tex. 2009). The test for abuse of discretion requires us to determine whether the trial court acted in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). Expert testimony lacking a proper foundation is incompetent, and its admission is an abuse of discretion. *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 239 (Tex. 2010).

To be admissible, all expert testimony must be relevant and reliable. *See* Tex. R. Evid. 702; *Guadalupe-Blanco River Auth. v. Kraft*, 77 S.W.3d 805, 807 (Tex. 2002). As the

3

evidentiary gatekeeper, the trial court is charged with assessing the reliability of particular evidence. *TXI Transp. Co.*, 306 S.W.3d at 235. The Texas Supreme Court has compiled a nonexclusive list of suggested factors for assessing the admissibility of expert testimony under Rule 702. *Id.* This includes determining "the extent to which the technique relies upon subjective interpretation of the expert." *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995).

In making its assessment, a court does not consider the correctness of an expert's conclusions but instead determines whether the analysis an expert used to reach an opinion is reliable and therefore admissible. *TXI Transp. Co.*, 306 S.W.3d at 239. Accordingly, "courts are to rigorously examine the validity of facts and assumptions on which the testimony is based, as well as the principles, research, and methodology underlying the expert's conclusions and the manner in which the principles and methodologies are applied by the expert to reach the conclusions." *Whirlpool*, 298 S.W.3d at 637.

## DISCUSSION

As an affirmative defense to Gonzales's claim, Reyes relied on section 16.025 of the civil practice and remedies code, which provides:

§ 16.025 Adverse Possession: Five-Year Limitations Period

(a)    A person must bring suit not later than five years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who:

      (1)  cultivates, uses, or enjoys the property;
      (2)  pays applicable taxes on the property; and
      (3)  claims the property under a duly registered deed.

(b) This section does not apply to a claim based on a forged deed or a deed executed under a forged power of attorney.

Tex. Civ. Prac. & Rem. Code Ann. § 16.025.

In his first issue, Gonzales challenges the trial court's order sustaining Reyes's objection to the affidavit of handwriting expert Linda James. Gonzales argues that the court erred because the affidavit of his "handwriting expert" was "competent summary judgment evidence" supporting his forgery claim. The trial court's order indicates that Reyes objected to the James affidavit on the ground that it lacked "foundation for the underlying data." Once Reyes made her objection, the burden shifted to Gonzales to establish that the expert's opinion was reliable. *Guadalupe-Blanco River Auth.*, 77 S.W.3d at 807. Both parties were given an opportunity to file supplemental evidence before the trial court granted summary judgment in favor of Reyes. Gonzales filed a supplemental expert's affidavit with an additional document but did not offer evidence addressing Reyes's objection to lack of foundation. On appeal, Gonzales contends that the handwriting expert's affidavit "contained each element required and it attached microscopic images of the signatures examined and referred to in the expert's report." Reyes counters that the affidavit is unreliable because it lacks foundation. Specifically, she maintains that the affiant failed to provide a basis for her conclusion that the signatures on the deed were "non-genuine" and that the expert's opinion was not based on reliable data.

First, Reyes asserts that the affidavit "contains neither scientific technique or method and has no explanation of how any technique or method was applied to reach the conclusions." An expert's testimony is unreliable if too great an analytical gap exists between the data and opinion,

or if the opinion is based on subjective belief or unsupported speculation rather than scientific methods and procedures. *TXI Transp. Co.*, 306 S.W.3d at 239. It is "incumbent" on experts to make this connection to show how data analyzed provides valid support for their conclusions. *Whirlpool*, 298 S.W.3d at 642.

James's affidavit mainly includes her qualifications, two paragraphs containing vague statements about her methodology, and "handwriting opinion terminology" taken from "Journal of Forensic Sciences, Letters to the Editor, March 1991." The affidavit stated that, in reaching her conclusion, James relied on a "microscopic examination" of signatures that were submitted "in the name of" the parents to identify "handwriting characteristics" for comparison "to determine whether or not the signatures on the Warranty Deed are genuine." Under the heading of "Applied Handwriting Principles," James references the principles that an "expert must adhere to" according to "*Questioned Documents*, Albert Osborn" and other authorities. According to James, these "principles" entail looking for "evidence of forgery as indicated by line quality, suspicious retouching, unnatural hesitation, pen lifts, interrupted and unnatural movements, identity of forms of several disputed signatures, or any evidence of hesitating, drawn writing."

A section labeled "Conclusion" indicates that James's "opinion" was "rendered with scientific certainty" and stated as follows:

> After a microscopic examination, it was found that the signatures of *Guadalupe and Margarita Gonzales*, on the Warranty Deed, dated 3/27/91 lack spontaneity and are drawn, unnatural signatures containing overlapping lines instead of continuous lines and omitted letters.
>
> Based on the application of the handwriting principles given in this report, and my experience and training as a forensic document and handwriting examiner, it is my

professional opinion that the signatures, *Guadalupe and Margarita Gonzales*, on the Warranty Deed, dated 3/27/91 are non-genuine.

Under the heading of "Observations," James explains her findings in two sentences. First, she states that "the creator duplicated the signatures with some fashionable degree of pictorial similarity." However, she concludes that a microscopic examination of the parents' original signatures on other documents "clearly revealed internal problems," in the form of "unnatural hesitations, pen lifts, and interrupted and unnatural movements."

In the absence of more detailed information about the expert's methodology, the trial court did not abuse its discretion in concluding that the affidavit contains more than a permissible analytical gap between the expert's data and conclusion. *See TXI Transp. Co.*, 306 S.W.3d at 239. In short, the affidavit failed to adequately connect the underlying data with the offered conclusion. An expert's conclusory or speculative opinion is not relevant evidence because it does not tend to make the existence of material facts more probable or less probable. *Whirlpool*, 298 S.W.3d at 637. An expert opinion based on unreliable foundation or flawed methodology is unreliable and does not satisfy the relevancy requirement of Rule 702. *TXI Transp. Co.*, 306 S.W.3d at 234.

In addition, the expert here apparently elected to disregard undisputed facts to reach her opinion. Opinions can be unreliable if based on assumed facts that vary from the actual facts, or if they are conclusory. *Whirlpool*, 298 S.W.3d at 637. An opinion is conclusory when it is based on tests or data that do not support the conclusions reached. *Id.* Here, the record indicates that even though Gonzales admitted that his mother signed the deed, his own expert concluded that the

7

signatures for both parents had been forged. *See Wal-Mart Stores, Inc. v. Merrell*, 313 S.W.3d 837, 840 (Tex. 2010) (rejecting expert testimony that ignores apparently contradictory facts).

We conclude that the trial court did not abuse its discretion in sustaining Reyes's objection to the James affidavit. We overrule Gonzales's first issue.

In his second issue, Gonzales argues that the trial court erred in granting summary judgment based on the affirmative defense of limitations because there is a genuine issue of material fact as to the accrual date of his cause of action.

To be entitled to summary judgment based on her affirmative defense, Reyes was required to establish the elements of the relevant adverse possession statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.025.[1] The statute provides that a party "must bring suit not later than five years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another." *Id.* § 16.025(a). A person holding adverse possession under the statute must (1) cultivate, use, or enjoy the property, (2) pay applicable taxes on the property, and (3) claim the property under a duly registered deed. *Id.* Requirements (1) and (3) are not at issue in this case—only requirement (2). On appeal, Gonzales contends that summary judgment was improper because a fact issue existed regarding whether Reyes paid "applicable taxes on the property." *See id.* § 16.025(a)(2).

---

[1] Because the trial court did not abuse its discretion in sustaining Reyes's objection to the affidavit of Gonzales's handwriting expert, there was no summary judgment evidence raising the issue of forgery that might bring into play subsection (b) of section 16.025.

Gonzales claims that Reyes failed to timely pay taxes for five years following accrual of his cause of action. Gonzales asserts that the relevant time period is the five-year period beginning in January 2002 and ending in December 2007.

Gonzales argues that Reyes failed to establish that she timely paid applicable taxes on the property during each year of the limitations period. Specifically, he contends that "taxes must be paid for each year of that period before they become delinquent," and that Reyes did not "pay the taxes on time." Referencing the state property tax code, Gonzales asserts that the taxes "would have been delinquent for 2007 if paid after January 31, 2008." According to Gonzales, Reyes failed to pay taxes before they became delinquent within the five-year limitations period because she "paid the taxes for 2007 in installments beginning January 31, 2008 and ending August 22, 2008." In support of this argument, Gonzales relied on a discussion of the tax requirement in *Thomas v. Rhodes*, 701 S.W.2d 943, 947 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.).

In *Thomas*, the court held that taxes paid during a period of adverse possession must be paid before becoming delinquent. *Id.* In the present case, however, the summary-judgment evidence established that Reyes paid taxes as required each year of the five-year limitations period that ended in January 2007 and that there was no delinquency during this period. According to receipts contained in the record, the property taxes due during January 2007 were paid by Reyes on January 31, 2007. Gonzales does not assert that Reyes's taxes were delinquent for tax years 2001 through 2006. Accordingly, Reyes's apparent delinquency in paying taxes that were due in

9

January 2008 (for tax year 2007) would have occurred *after* the expiration of the limitations period and thus would not preclude Reyes's limitations defense.  We overrule Gonzales's second issue.**²**

**CONCLUSION**

Having overruled Gonzales's two issues, we affirm the judgment of the trial court.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed:   July 7, 2011

_____

² As an additional ground for affirming summary judgment, Reyes argues that Gonzales's "claim is conclusively negated" by his testimony and the "contents of the will."  Reyes contends that a remand would be a "waste of judicial resources and a monumental injustice" to Reyes because the summary-judgment evidence "clearly demonstrates" that Gonzales's suit is "absolutely without basis."  As Reyes acknowledges, this was not a ground for summary judgment in the trial court and therefore was not preserved for appeal.  Although we need not discuss this ground, we note that the only other basis for Gonzales's asserted ownership of the property arises from a will his father signed in 1996.  The will includes the following provision:  "My primary residence will be inherited by my spouse . . . .  In the event that she is unable to assume ownership, I appoint my son Jose Guadalupe Gonzalez, Jr. as sole owner of said property."

Previously, Gonzales had argued that the will's language cast doubt about his father's signature by indicating that his father would not have chosen to convey the property to Reyes to hold in trust for her daughter.  However, Gonzales has admitted in his brief that his father's interest in the property had not been left to Gonzales but that his father "executed a will leaving the property to his wife."  As Reyes points out, their father did not "bequeath his interest in the property" to Gonzales even if the 1991 deed were invalid as Gonzales argues.