

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NO. 2-06-341-CV**

SHARON JORDAN, AS NEXT FRIEND                APPELLANTS
OF MICHAEL MASHBURN, AND
MICHAEL MASHBURN, INDIVIDUALLY

V.

JOSEPH DANIELS, D.O.,                        APPELLEES
JOSEPH DANIELS, D.O., P.A. AND
AMERICAN ORTHOPEDIC NEUROLOGICAL
REHABILITATION CENTER

------------

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellants Sharon Jordan, as Next friend of Michael Mashburn (Jordan),

and Michael Mashburn, individually (Mashburn) (sometimes collectively,

Mashburn), appeal from a summary judgment rendered for appellees Joseph

---

[1] Tex. R. App. P. 47.4.

Daniels, D.O., Joseph Daniels, D.O., P.A., and American Orthopedic Neurological Rehabilitation Center (collectively, Dr. Daniels) on Mashburn's medical malpractice claims. In three issues, Mashburn complains that the trial court improperly (1) granted Dr. Daniels's motion for summary judgment, (2) denied Mashburn's motion for new trial, and (3) sustained various objections to Mashburn's summary judgment evidence. We affirm in part and reverse and remand in part.

**Background**

Mashburn suffers from spina bifida, a condition that, among other health problems, prevents him from having any sensation below the waist. On September 13, 2001, Mashburn went to the emergency room at Osteopathic Medical Center of Texas (OMCT) complaining of swollen testicles and possible deep vein thrombosis. He was seen by the emergency room physician, Dr. Glen Calabrese, and subsequently admitted to OMCT for a traumatic urethral hemorrhage. Radiological studies at OMCT revealed that Mashburn had also sustained a fracture of his left femur.

Mashburn's attending physician contacted Dr. Daniels, a board-certified orthopedic surgeon, regarding Mashburn's fracture. Upon initial consultation, Dr. Daniels ordered an x-ray to confirm the fracture and contemplated surgery. When Dr. Daniels received the x-ray findings, he diagnosed Mashburn with a

2

displaced left proximal femur fracture. Surgery was scheduled and on September 19, 2001, Dr. Daniels performed a "closed reduction and internal fixation with an Ace 4 mm flexible rod."

After surgery, Dr. Daniels provided immediate post-operative follow-up care. He also saw Mashburn on October 23, 2001, for an initial follow-up visit and on January 8, 2002, for a second follow-up visit. At the January 8, 2002 visit, Mashburn was without complaints and Dr. Daniels decided that Mashburn would be released and seen only on a "prn [as needed] basis." Mashburn continued under the care of primary care physician, Margaret Basiliadis, D.O.

In March 2002, Mashburn's left foot began swelling to the point he developed cellulitis.[2] Jordan was concerned because the swelling never subsided, so on April 4, 2002, she contacted Dr. Daniels's office. She was advised by staff to elevate Mashburn's foot above heart level, and referred to Dr. Basiliadis.

On June 14, 2002, Dr. Basiliadis ordered x-rays of Mashburn's leg that indicated Mashburn's femur was dislocated and the rod that Dr. Daniels implanted was extending beyond the lower extremity of the femur into soft

---

[2] Cellulitis is an acute spreading bacterial infection below the surface of the skin characterized by redness, warmth, swelling, and pain. Cellulitis can also cause fever, chills, and enlarged lymph nodes.

3

tissue. After viewing the x-ray reports, Dr. Basiliadis recommended that Mashburn "return to Ortho." On June 19, 2002, Jordan was notified of Dr. Basiliadis's recommendation and the x-ray reports were faxed to Dr. Daniels's office. According to Dr. Basiliadis's medical records, Jordan reported that Mashburn had a June 27, 2002 appointment with Dr. Daniels. But sometime between June 19 and June 24, Dr. Daniels, apparently after reviewing the x-ray reports, suggested to Jordan that Mashburn be taken to the emergency room.

On June 25, Mashburn went to the emergency room at Harris Methodist Hospital where x-rays were again taken. The emergency room doctor reported that the new x-rays showed there was slight tissue swelling and inflamation in the area around the rod, but that everything else was "okay"; the femur was not dislocated and the rod was not dislodged. According to Dr. Daniels's notes, Mashburn was a "NO SHOW" for the scheduled June 27 appointment.

In August 2003, Mashburn sued OMCT and Dr. Calabrese, alleging professional negligence in diagnosing and treating Mashburn immediately before the September 2001 surgery. In the meantime, Mashburn's condition had continued to worsen—he developed gangrene in his feet, was bedridden, and had severe breathing problems. At some point in the ensuing months, Dr. Basiliadis told Mashburn that he was "probably going to die" and recommended hospice services. In the summer of 2004, Jordan sought a second opinion

4

concerning Mashburn's condition, and by that fall she decided to replace Dr. Basiliadis as Mashburn's primary care physician. On October 14, 2004, Mashburn filed an amended petition naming Dr. Basiliadis as a defendant.

On October 27, 2004, Mashburn met with Dr. Daniels. According to Jordan, Dr. Daniels examined Mashburn that day, made notes on Mashburn's chart, agreed that Mashburn should find a replacement for Dr. Basiliadis, prescribed blood work and MRI and CT studies, and said Mashburn's leg needed to be amputated (Mashburn later chose to have surgery to remove his leg).[3]

About two weeks later, on November 11, 2004, Mashburn served a notice of claim letter on Dr. Daniels.[4] Then on November 23, 2004, Mashburn sued Dr. Daniels, adding him to the on-going litigation against OMCT, Dr.

---

[3] Dr. Daniels disputes that he examined Mashburn on October 27, 2004, but because we accept Mashburn's account as true for purposes of reviewing the summary judgment, we assume that Dr. Daniels examined Mashburn during this office visit. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985).

[4] Because this case was filed before September 1, 2003, article 4590i of the Texas Revised Civil Statutes governs this case. *See* Act of May 30, 1977, 65th Leg., R.S., ch. 817, §§ 1.01–12.01, 1977 Tex. Gen. Laws 2039, 2053 (as amended), *repealed by* Act of June 2, 2001, 78th Leg., R.S., ch. 204 § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001–.507 (Vernon 2005 & Supp. 2008)). A notice of claim letter serves to toll limitations for an additional seventy-five days beyond the two-year limitation period set forth in the statutes. Tex. Rev. Civ. Stat. Ann. art. 4590(i), § 4.01(c) (citations are to the former civil statutes applicable in this case).

Calabrese, and Dr. Basiliadis. On February 3, 2005, Dr. Daniels filed a motion for summary judgment on the ground that Mashburn's claims against Dr. Daniels were time-barred. Mashburn's response included affidavits from Jordan and expert witness Dr. Timothy Sitter, a board-certified orthopedic surgeon. Dr. Daniels objected to the affidavits on various grounds.

On March 22, 2005, the trial court signed an order granting Dr. Daniels's motion for summary judgment. Later, on May 2, 2006, the trial court, noting that it had previously ruled on Dr. Daniels's motion for summary judgment but had neglected to rule on his objections to Mashburn's summary judgment evidence, sent written notice to the parties sustaining some of the objections.

Mashburn filed a motion for new trial attaching "newly discovered evidence." Mashburn also moved for reconsideration of his summary judgment evidence. The trial court denied both of these motions. This appeal followed.

**Issues**

Mashburn raises three issues on appeal. First, he complains that the trial court improperly granted summary judgment for Dr. Daniels on limitations grounds based on a finding that Dr. Daniels's duty to treat Mashburn terminated on January 8, 2002, because, under the ascertainable date of the breach or tort analysis, the evidence shows that Dr. Daniels provided negligent follow-up treatment on three ascertainable dates within the statute of limitations.

6

Mashburn further contends that the trial court abused its discretion in denying Mashburn's motion for new trial, and in granting Dr. Daniels's objections to Dr. Sitter's and Jordan's affidavits.

**Analysis**

**A.    Applicable Law**

**1.    Standard of Review for Summary Judgment**

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[5] The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.[6]

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[7] The summary judgment will be affirmed only if the record establishes that the movant conclusively proved all

---

[5] Tex. R. Civ. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

[6] *Sw. Elec. Power Co.*, 73 S.W.3d at 215.

[7] *Nixon*, 690 S.W.2d at 548–49.

7

essential elements of the movant's cause of action or defense as a matter of law.[8]

A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense.[9] To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law.[10]

With regard to the affirmative defense of limitations, the movant must conclusively prove when the cause of action accrued. If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations.[11]

---

[8] *Clear Creek Basin*, 589 S.W.2d at 678.

[9] *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *see* Tex. R. Civ. P. 166a(b), (c).

[10] *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996).

[11] *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).

### 2. Limitations for Medical Negligence Claims

Section 10.01 establishes an absolute two-year statute of limitations for health care liability claims.[12] The limitations period begins to run on one of three dates: (1) the date of the occurrence of the breach or tort; (2) the date the medical or health care treatment that is the subject of the claim is completed; or (3) the date the hospitalization for which the claim is made is completed.[13] A plaintiff may not simply choose the most favorable date that falls within this provision, but rather, if the specific date of the alleged breach or tort is ascertainable, the limitations period commences upon that date.[14] The "ascertainable date" for a negligent follow-up treatment claim is the last date on which the physician provided follow-up treatment as required by the relevant standard of care.[15]

### B. Summary Judgment

Dr. Daniels moved for summary judgment on the sole ground that his follow-up treatment of Mashburn after the September 2001 surgery ended

---

[12] Tex. Rev. Civ. Stat. Ann. art. 4590i, § 10.01.

[13] *Id.*; *see also Shah v. Moss*, 67 S.W.3d 836, 841 (Tex. 2001); *Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex. 1987).

[14] *Shah*, 67 S.W.3d at 841; *Earle v. Ratliff*, 998 S.W.2d 882, 886 (Tex. 1999).

[15] *Shah*, 67 S.W.3d at 843–45; *Earle*, 998 S.W.2d at 887.

when he released Mashburn on January 8, 2002. Dr. Daniels's affidavit in support of his summary judgment motion avers that January 8, 2002 "was the last visit at which [he] performed a medical examination upon Mr. Mashburn or provided him and his family with any medical advice as his physician." Dr. Daniels's affidavit further states that "it was decided [during this visit] that [Mashburn] would be released and seen only on a prn (as needed) basis."

Mashburn argues, however, that Dr. Daniels owed a duty to provide follow-up care to Mashburn after January 8, 2002, and that the summary judgment evidence establishes that Dr. Daniels breached that duty three times within the limitations period: November 12, 2002; March, summer, and fall 2003; and October 27, 2004. Mashburn further asserts that, although his pleadings and affidavits identify specific treatment dates, we should apply a course of treatment analysis to determine when his claims accrued. Relying on Dr. Sitter's affidavit, Mashburn contends that under such an analysis his claims did not accrue until October 27, 2004, the last date Dr. Daniels treated Mashburn. This argument, however, ignores the established rule for determining when a claim accrues for limitations purposes in negligence cases—if the date the alleged tort or breach took place is ascertainable, a

10

course of treatment analysis is inapplicable to determining when limitations begins to run.[16]

Mashburn alleges that Dr. Daniels treated him on the following dates:

- September 19, 2001;

- October 23, 2001;

- January 8, 2002;

- April 4, 2002;

- June 24–27, 2002;

- November 12, 2002;

- March, summer, and fall 2003; and

- October 27, 2004.

Because these dates are ascertainable, limitations began to run from each date Mashburn alleges Dr. Daniels treated him.[17] Accordingly, all of Mashburn's alleged claims that accrued more than two years before the date Mashburn served his statutory notice of claim letter on Dr. Daniels, November 11, 2004,

---

[16] *Shah*, 67 S.W.3d at 841 ("[I]f the defendant committed the alleged tort on an ascertainable date, whether the plaintiff established a course of treatment is immaterial because limitations begins to run on the ascertainable date.").

[17] *Id.* at 844.

are time-barred.[18] Therefore, the trial court properly granted summary judgment on limitations grounds as to the alleged claims that accrued on September 19, 2001; October 23, 2001; January 8, 2002; April 4, 2002; and June 24–27, 2002.[19]

With regard to the remaining three ascertainable dates on which Mashburn alleges Dr. Daniels treated him, however, the alleged claims accruing on those dates are not barred by limitations because they accrued less than two years from the date Mashburn served his notice of claim letter on Dr. Daniels.[20] Since these claims accrued during the limitations period, and because limitations was Dr. Daniels's only basis for summary judgment, the trial court erred in granting summary judgment as to these claims.[21] Accordingly, we sustain Mashburn's first issue in part.[22]

**Conclusion**

---

[18] *Id.* at 844–45.

[19] *Id.*

[20] *Id.*

[21] *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex. 2002) ("A court cannot grant summary judgment on grounds that were not presented.").

[22] Because of our disposition of Mashburn's first issue, we need not reach the remaining two issues raised by Mashburn. *See* Tex. R. App. P. 47.1.

12

We reverse the summary judgment in part as to the alleged claims that accrued on November 12, 2002, during March, summer, and fall 2003, and on October 27, 2004, and remand to the trial court for further proceedings on those alleged claims consistent with this opinion.[23] We affirm the remainder of the trial court's summary judgment.

JOHN CAYCE
CHIEF JUSTICE

PANEL:  CAYCE, C.J.; HOLMAN and MCCOY, JJ.

DELIVERED:  November 13, 2008

---

[23] Because our review is limited to the ground asserted in the summary judgment motion, we express no opinion on the merits of the remanded claims.

13