COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.
2-06-341-CV

 

                                                                                                           

SHARON JORDAN, AS NEXT FRIEND                                   APPELLANTS

OF
MICHAEL MASHBURN, AND 

MICHAEL
MASHBURN, INDIVIDUALLY

 

                                                      V.

 

JOSEPH DANIELS, D.O.,                                                        APPELLEES

JOSEPH
DANIELS, D.O., P.A. AND 

AMERICAN
ORTHOPEDIC NEUROLOGICAL 

REHABILITATION
CENTER

                                                  ------------

 

              FROM
THE 96TH DISTRICT COURT OF TARRANT COUNTY

 

                                                  ------------

 

                                  MEMORANDUM
OPINION[1]

 

                                                  ------------

 








Appellants Sharon Jordan, as
Next friend of Michael Mashburn (Jordan), and Michael Mashburn, individually
(Mashburn) (sometimes collectively, Mashburn), appeal from a summary judgment
rendered for appellees Joseph Daniels, D.O., Joseph Daniels, D.O., P.A., and
American Orthopedic Neurological Rehabilitation Center (collectively, Dr.
Daniels) on Mashburn=s medical
malpractice claims.  In three issues,
Mashburn complains that the trial court improperly (1) granted Dr. Daniels=s motion for summary judgment, (2) denied Mashburn=s motion for new trial, and (3) sustained various objections to
Mashburn=s summary judgment evidence.  We
affirm in part and reverse and remand in part.

Background

Mashburn suffers from spina
bifida, a condition that, among other health problems, prevents him from having
any sensation below the waist.  On
September 13, 2001, Mashburn went to the emergency room at Osteopathic Medical
Center of Texas (OMCT) complaining of swollen testicles and possible deep vein
thrombosis.  He was seen by the emergency
room physician, Dr. Glen Calabrese, and subsequently admitted to OMCT for a
traumatic urethral hemorrhage. 
Radiological studies at OMCT revealed that Mashburn had also sustained a
fracture of his left femur.  








Mashburn=s attending physician contacted Dr. Daniels, a board-certified
orthopedic surgeon, regarding Mashburn=s fracture.  Upon initial
consultation, Dr. Daniels ordered an x-ray to confirm the fracture and
contemplated surgery.  When Dr. Daniels
received the x-ray findings, he diagnosed Mashburn with a displaced left
proximal femur fracture.  Surgery was
scheduled and on September 19, 2001, Dr. Daniels performed a Aclosed reduction and internal fixation with an Ace 4 mm flexible rod.@

After surgery, Dr. Daniels
provided immediate post-operative follow-up care.  He also saw Mashburn on October 23, 2001, for
an initial follow-up visit and on January 8, 2002, for a second follow-up
visit.  At the January 8, 2002 visit,
Mashburn was without complaints and Dr. Daniels decided that Mashburn would be
released and seen only on a Aprn [as needed] basis.@  Mashburn continued under the
care of primary care physician, Margaret Basiliadis, D.O.

In March 2002, Mashburn=s left foot began swelling to the point he developed cellulitis.[2]  Jordan was concerned because the swelling
never subsided, so on April 4, 2002, she contacted Dr. Daniels=s office.  She was advised by
staff to elevate Mashburn=s foot above
heart level, and referred to Dr. Basiliadis.








On June 14, 2002, Dr.
Basiliadis ordered x-rays of Mashburn=s leg that indicated Mashburn=s femur was dislocated and the rod that Dr. Daniels implanted was
extending beyond the lower extremity of the femur into soft tissue.  After viewing the x-ray reports, Dr.
Basiliadis recommended that Mashburn Areturn to Ortho.@  On June 19, 2002, Jordan was notified of Dr.
Basiliadis=s
recommendation and the x-ray reports were faxed to Dr. Daniels=s office.  According to Dr.
Basiliadis=s medical
records, Jordan reported that Mashburn had a June 27, 2002 appointment with Dr.
Daniels.  But sometime between June 19
and June 24, Dr. Daniels, apparently after reviewing the x-ray reports,
suggested to Jordan that Mashburn be taken to the emergency room.

On June 25, Mashburn went to
the emergency room at Harris Methodist Hospital where x-rays were again taken.  The emergency room doctor reported that the
new x-rays showed there was slight tissue swelling and inflamation in the area
around the rod, but that everything else was Aokay@; the femur
was not dislocated and the rod was not dislodged.  According to Dr. Daniels=s notes, Mashburn was a ANO SHOW@ for the
scheduled June 27 appointment.








In August 2003, Mashburn sued
OMCT and Dr. Calabrese, alleging professional negligence in diagnosing and
treating Mashburn immediately before the September 2001 surgery.  In the meantime, Mashburn=s condition had continued to worsenChe developed gangrene in his feet, was bedridden, and had severe
breathing problems.  At some point in the
ensuing months, Dr. Basiliadis told Mashburn that he was Aprobably going to die@ and recommended hospice services. 
In the summer of 2004, Jordan sought a second opinion concerning
Mashburn=s condition, and by that fall she decided to replace Dr. Basiliadis as
Mashburn=s primary care physician.  On
October 14, 2004, Mashburn filed an amended petition naming Dr. Basiliadis as a
defendant.

On October 27, 2004, Mashburn
met with Dr. Daniels.  According to
Jordan, Dr. Daniels examined Mashburn that day, made notes on Mashburn=s chart, agreed that Mashburn should find a replacement for Dr.
Basiliadis, prescribed blood work and MRI and CT studies, and said Mashburn=s leg needed to be amputated (Mashburn later chose to have surgery to
remove his leg).[3]








About two weeks later, on
November 11, 2004, Mashburn served a notice of claim letter on Dr. Daniels.[4]  Then on November 23, 2004, Mashburn sued Dr.
Daniels, adding him to the on-going litigation against OMCT, Dr. Calabrese, and
Dr. Basiliadis.  On February 3, 2005, Dr.
Daniels filed a motion for summary judgment on the ground that Mashburn=s claims against Dr. Daniels were time-barred.  Mashburn=s response included affidavits from Jordan and expert witness Dr.
Timothy Sitter, a board-certified orthopedic surgeon.  Dr. Daniels objected to the affidavits on
various grounds.

On March 22, 2005, the trial
court signed an order granting Dr. Daniels=s motion for summary judgment. 
Later, on May 2, 2006, the trial court, noting that it had previously
ruled on Dr. Daniels=s motion for
summary judgment but had neglected to rule on his objections to Mashburn=s summary judgment evidence, sent written notice to the parties
sustaining some of the objections.

Mashburn filed a motion for
new trial attaching Anewly
discovered evidence.@  Mashburn also moved for reconsideration of
his summary judgment evidence.  The trial
court denied both of these motions.  This
appeal followed.

Issues








Mashburn raises three issues
on appeal.  First, he complains that the
trial court improperly granted summary judgment for Dr. Daniels on limitations
grounds based on a finding that Dr. Daniels=s duty to treat Mashburn terminated on January 8, 2002, because, under
the ascertainable date of the breach or tort analysis, the evidence shows that
Dr. Daniels provided negligent follow-up treatment on three ascertainable dates
within the statute of limitations. 
Mashburn further contends that the trial court abused its discretion in
denying Mashburn=s motion for
new trial, and in granting Dr. Daniels=s objections to Dr. Sitter=s and Jordan=s
affidavits.

Analysis

A.     Applicable
Law

1.      Standard of Review for Summary Judgment

In a summary judgment case,
the issue on appeal is whether the movant met the summary judgment burden by
establishing that no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law.[5]  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.[6]








When reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant, and we
indulge every reasonable inference and resolve any doubts in the nonmovant=s favor.[7]  The summary judgment will be affirmed only if
the record establishes that the movant conclusively proved all essential
elements of the movant=s cause of
action or defense as a matter of law.[8]

A defendant is entitled to
summary judgment on an affirmative defense if the defendant conclusively proves
all the elements of the affirmative defense.[9]  To accomplish this, the defendant-movant must
present summary judgment evidence that establishes each element of the
affirmative defense as a matter of law.[10]

With regard to the
affirmative defense of limitations, the movant must conclusively prove when the
cause of action accrued.  If the movant
establishes that the statute of limitations bars the action, the nonmovant must
then adduce summary judgment proof raising a fact issue in avoidance of the
statute of limitations.[11]








2.      Limitations for Medical
Negligence Claims

Section
10.01 establishes an absolute two-year statute of limitations for health care
liability claims.[12]  The limitations period begins to run on one
of three dates:  (1) the date of the
occurrence of the breach or tort; (2) the date the medical or health care
treatment that is the subject of the claim is completed; or (3) the date the
hospitalization for which the claim is made is completed.[13]  A plaintiff may not simply choose the most
favorable date that falls within this provision, but rather, if the specific
date of the alleged breach or tort is ascertainable, the limitations period
commences upon that date.[14]  The Aascertainable date@ for a negligent follow-up treatment claim is the last date on which
the physician provided follow-up treatment as required by the relevant standard
of care.[15]

B.      Summary
Judgment








Dr. Daniels moved for summary
judgment on the sole ground that his follow-up treatment of Mashburn after the
September 2001 surgery ended when he released Mashburn on January 8, 2002.  Dr. Daniels=s affidavit in support of his summary judgment motion avers that
January 8, 2002 Awas the last
visit at which [he] performed a medical examination upon Mr. Mashburn or
provided him and his family with any medical advice as his physician.@  Dr. Daniels=s affidavit further states that Ait was decided [during this visit] that [Mashburn] would be released
and seen only on a prn (as needed) basis.@








Mashburn argues, however,
that Dr. Daniels owed a duty to provide follow-up care to Mashburn after
January 8, 2002, and that the summary judgment evidence establishes that Dr.
Daniels breached that duty three times within the limitations period:  November 12, 2002; March, summer, and fall
2003; and October 27, 2004.  Mashburn further
asserts that, although his pleadings and affidavits identify specific treatment
dates, we should apply a course of treatment analysis to determine when his
claims accrued.  Relying on Dr. Sitter=s affidavit, Mashburn contends that under such an analysis his claims
did not accrue until October 27, 2004, the last date Dr. Daniels treated
Mashburn.  This argument, however,
ignores the established rule for determining when a claim accrues for
limitations purposes in negligence casesCif the date the alleged tort or breach took place is ascertainable, a
course of treatment analysis is inapplicable to determining when limitations
begins to run.[16]

Mashburn alleges that Dr.
Daniels treated him on the following dates:

$               
September 19, 2001;

$               
October 23, 2001;

$               
January 8, 2002;

$               
April 4, 2002;

$               
June 24B27, 2002;

$               
November 12, 2002;

$               
March, summer, and fall 2003;
and

$               
October 27, 2004. 








Because these dates are ascertainable,
limitations began to run from each date Mashburn alleges Dr. Daniels treated
him.[17]  Accordingly, all of Mashburn=s alleged claims that accrued more than two years before the date
Mashburn served his statutory notice of claim letter on Dr. Daniels, November
11, 2004, are time-barred.[18]  Therefore, the trial court properly granted
summary judgment on limitations grounds as to the alleged claims that accrued
on September 19, 2001; October 23, 2001; January 8, 2002; April 4, 2002; and
June 24B27, 2002.[19]

With regard to the remaining
three ascertainable dates on which Mashburn alleges Dr. Daniels treated him,
however, the alleged claims accruing on those dates are not barred by
limitations because they accrued less than two years from the date Mashburn
served his notice of claim letter on Dr. Daniels.[20]  Since these claims accrued during the
limitations period, and because limitations was Dr. Daniels=s only basis for summary judgment, the trial court erred in granting
summary judgment as to these claims.[21]  Accordingly, we sustain Mashburn=s first issue in part.[22]

Conclusion








We reverse the summary
judgment in part as to the alleged claims that accrued on November 12, 2002,
during March, summer, and fall 2003, and on October 27, 2004, and remand to the
trial court for further proceedings on those alleged claims consistent with
this opinion.[23]  We affirm the remainder of the trial court=s summary judgment.

 

 

JOHN CAYCE

CHIEF JUSTICE

 

PANEL:  CAYCE, C.J.; HOLMAN and MCCOY, JJ.

 

DELIVERED:  November 13, 2008











[1]Tex.
R. App. P. 47.4.





[2]Cellulitis
is an acute spreading bacterial infection below the surface of the skin
characterized by redness, warmth, swelling, and pain.  Cellulitis can also cause fever, chills, and
enlarged lymph nodes.





[3]Dr.
Daniels disputes that he examined Mashburn on October 27, 2004, but because we
accept Mashburn=s
account as true for purposes of reviewing the summary judgment, we assume that
Dr. Daniels examined Mashburn during this office visit.  See Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548B49
(Tex. 1985).





[4]Because
this case was filed before September 1, 2003, article 4590i of the Texas
Revised Civil Statutes governs this case. 
See Act of May 30, 1977, 65th Leg., R.S., ch. 817, '' 1.01B12.01,
1977 Tex.  Gen. Laws 2039, 2053 (as
amended), repealed by Act of June 2, 2001, 78th Leg., R.S., ch. 204 '
10.09, 2003 Tex. Gen. Laws 847, 884 (current version at Tex. Civ. Prac. &
Rem. Code Ann. '' 74.001B.507
(Vernon 2005 & Supp. 2008)).  A
notice of claim letter serves to toll limitations for an additional
seventy-five days beyond the two-year limitation period set forth in the
statutes.  Tex. Rev. Civ. Stat. Ann. art.
4590(i), '
4.01(c) (citations are to the former civil statutes applicable in this case).





[5]Tex.
R. Civ. P. 166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215
(Tex. 2002); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671,
678 (Tex. 1979).





[6]Sw.
Elec. Power Co., 73 S.W.3d at 215.





[7]Nixon, 690
S.W.2d at 548B49.





[8]Clear
Creek Basin, 589 S.W.2d at 678.





[9]Rhone-Poulenc,
Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999); see
Tex. R. Civ. P. 166a(b), (c).





[10]Ryland
Group, Inc. v. Hood, 924 S.W.2d 120, 121 (Tex. 1996).





[11]KPMG
Peat Marwick v. Harrison County Hous. Fin. Corp., 988
S.W.2d 746, 748 (Tex. 1999).





[12]Tex.
Rev. Civ. Stat. Ann. art. 4590i, ' 10.01.





[13]Id.; see
also Shah v. Moss, 67 S.W.3d 836, 841 (Tex. 2001); Kimball v. Brothers,
741 S.W.2d 370, 372 (Tex. 1987).





[14]Shah, 67
S.W.3d at 841; Earle v. Ratliff, 998 S.W.2d 882, 886 (Tex. 1999).





[15]Shah, 67
S.W.3d at 843B45; Earle,
998 S.W.2d at 887.





[16]Shah, 67
S.W.3d at 841 (A[I]f
the defendant committed the alleged tort on an ascertainable date, whether the
plaintiff established a course of treatment is immaterial because limitations
begins to run on the ascertainable date.@).





[17]Id. at
844.





[18]Id. at
844B45.





[19]Id.





[20]Id.





[21]Johnson
v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 204 (Tex.
2002) (AA
court cannot grant summary judgment on grounds that were not presented.@).





[22]Because
of our disposition of Mashburn=s first issue, we need not
reach the remaining two issues raised by Mashburn.  See Tex. R. App. P. 47.1.





[23]Because
our review is limited to the ground asserted in the summary judgment motion, we
express no opinion on the merits of the remanded claims.