COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

DENNIS VERNER,                              §

                Appellant,          §

v.                                         §

                                           §

NATIONAL OILWELL VARCO, INC.,              §
F/K/A NATIONAL OILWELL, INC.,              §

                Appellee.           §

No. 08-09-00244-CV

Appeal from the

143rd Judicial District Court

of Reeves County, Texas

(TC# 08-12-19249-CVR)

## **O P I N I O N**

Dennis Verner appeals from a take-nothing summary judgment in favor of National Oilwell Varco, Inc. In his first issue, Mr. Verner challenges the trial court's summary judgment order granting Appellee's bill of review based on a lack of service of process. In his second issue, Mr. Verner contends that genuine issues of material fact should have precluded summary judgment in his personal injury suit. Affirmed.

Dennis Verner suffered personal injuries in June 2003, while working on a conduction oil rig owned by Patterson Drilling South, LP., in Reeves County, Texas. Mr. Verner filed suit on May 27, 2005, alleging the negligence of several defendants caused the rig's top drive to fail, which in turn caused his injuries (the personal injury suit). According to the original petition, "National Oil Well, Inc.," owned and operated some portion of the drilling equipment that failed. The petition stated

> Defendant, NATIONAL OIL WELL, INC., is incorporated under the laws of the State of Texas and has its principle place of business in Texas. It can be served with citation by serving its registered agent for service of process, CT

Corporation System, at 811 Dallas Avenue, Houston, Texas 77002.

The District Clerk of Reeves County issued service of process on May 31, 2005. "National Oil Well, Inc." did not file an answer or otherwise respond to the citation. On August 2, 2005, the office of the Secretary of the State of Texas certified that it received a copy of the citation and petition on July 14, 2005, and that the process was forwarded to CT Corporation System by certified mail, return receipt requested, on July 20, 2005. The process was returned on August 1, 2005, as undeliverable. The trial court entered a default judgment in excess of $400,000 for Mr. Verner on July 28, 2006, against "National Oil Well, Inc."

On December 15, 2008, "National Oilwell Varco, Inc., f/k/a/ National Oilwell, Inc." filed a petition for bill of review to set aside the default judgment on the basis that the company was never served with process.[1] The entity alleged that it did not become aware of Mr. Verner's suit until October 9, 2008, when execution of the judgment was attempted on property owned by another entity known as "National Oilwell Varco, L.P." Appellee's relationship to "National Oilwell Varco, L.P." remains unclear.

However, the appellate record contains no less than six other business entities who are involved, or are alleged to have been involved, in Appellee's relationship to the top rig that caused Mr. Verner's injuries. These other entities include three different entities known as "National Oilwell Inc.," one entity known as "National Oilwell, L.P.," one entity known as National Oilwell Varco, L.P.," and another entity known as "NOW Oilfield Services, Inc."

The first, "National Oilwell, Inc.," existed as a corporation created under Delaware law in

---

[1] For ease of reference, we will refer to National Oilwell Varco, Inc., as "Appellee" throughout this opinion. Other business entities will be referred to by their full names as necessary.

1987, and dissolved in 1995. This prior "National Oilwell, Inc." was registered to do business in Texas during its existence and had appointed "CT Corporation" of Houston, as its agent for service of process. Sometime after this entity's dissolution, the second "National Oilwell, Inc.," was created, also under the laws of the State of Delaware. According to a certificate of fact created by Texas's Secretary of State, this post-1995 "National Oilwell, Inc.," was never registered to do business in Texas, and had no relationship with CT Corporation.

Sometime between 1995 and 2005, the second "National Oilwell Inc." split into two separate entities. One part became the third "National Oilwell, Inc.," while the other became "National Oilwell, L.P." "National Oilwell, L.P." became "National Oilwell Varco, L.P.," in 2005. "National Oilwell Varco, L.P." is not registered to do business in Texas, and has no registered agent for service of process in the state. "NOW Oilfield Services, Inc.," is the general partner of "National Oilwell Varco, L.P.," and is in turn owned by the third "National Oilwell, Inc." As with "National Oilwell Varco, L.P." neither of these entities were created under the laws of the State of Texas, neither are registered to do business in Texas, and neither have appointed an agent for service of process in the state. It is unclear exactly how Appellee, "National Oilwell Varco, Inc.," is related to any of these other entities. In addition, there is no reference in the record to the entity "National Oil Well, Inc.," the named defendant on the default judgment.

Mr. Verner filed a general denial and a "Trial Brief," in response to Appellee's petition for bill of review. In the brief, Mr. Verner argued: (1) that a certificate from the Secretary of State conclusively established that process was served; and (2) that Appellee was doing business as "National Oilwell" in all counties in Texas and was therefore bound by the judgment taken

under its assumed name.

Appellee filed a motion for summary judgment on its bill of review on March 2, 2009. Appellee argued it was entitled to summary judgment on its claim of lack of service for three reasons: (1) the Secretary of State's certificate documenting the citation in the personal injury suit was "undeliverable" constitutes prima facie evidence that citation was not served; (2) uncontroverted evidence establishes a lack of service; and (3) Mr. Verner's attempt to serve a foreign entity through the Secretary of State was defective. Following Mr. Verner's summary judgment response, the trial court granted Appellee's motion, set aside the default judgment, and returned the parties to their original status in the personal injury suit. The judgment did not specify the basis for the court's ruling.

Appellee subsequently moved for summary judgment on Mr. Verner's negligence claim. As grounds for summary judgment, Appellee argued that Mr. Verner's cause of action must fail as a matter of law because Appellee did not own, sell, or lease the top drive equipment that was implicated in Mr. Verner's petition, or, because Appellee did not employ the individuals who operated or otherwise worked on the top drive. The trial court granted Appellee's second motion for summary judgment and entered a take-noting judgment on Mr. Verner's cause of action on August 21, 2009. Again, the court did not specify the basis for its decision. On appeal, Mr. Verner raises two issues challenging the trial court's bill of review summary judgment, and the personal injury suit summary judgment respectively.

A traditional summary judgment is subject to *de novo* review. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). To succeed on a traditional motion for summary judgment, the movant must establish that there is no genuine issue of material fact so

-4-

that judgment should be granted as a matter of law.  *Diversicare Gen. Patrner., Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005).  Summary judgment is therefore properly granted if the defendant disproves at least one essential element of the plaintiff's cause of action, or establishes all essential elements of an affirmative defense.  *See D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002); *Shah v. Moss*, 67 S.W.3d 836, 842 (Tex. 2001).  If the movant is successful in establishing its right to judgment as a matter of law, the burden then shifts to the non-movant to produce evidence raising a genuine issue of material fact.  *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979).  The reviewing court will take as true all competent evidence favorable to the non-movant, indulge every reasonable inference, and resolve any doubts in the non-movant's favor.  *See Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

When the trial court's summary judgment order does not specify the basis for granting the motion, the appellant must address and negate all grounds that support the judgment.  *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).  When an appellant fails to negate each ground on which the judgment could have been based, the reviewing court must affirm the summary judgment.  *Leffler v. JP Morgan Chase Bank, N.A.*, 290 S.W.3d 384, 386 (Tex.App.--El Paso 2009, no pet.).  When a ground upon which summary judgment could have been granted, properly or improperly, goes unchallenged on appeal the judgment must be upheld.  *Holloway v. Starnes*, 840 S.W.2d 14, 23 (Tex.App.--Dallas 1992, writ denied).

In Issue One, Mr. Verner challenges the trial court's summary judgment on Appellee's bill of review.  In its motion, Appellee raised three potential grounds for summary judgement: (1) the evidence conclusively established it did not receive notice of the personal injury suit; (2)

the uncontested summary judgment evidence establishes a lack of service; and (3) the attempted substituted service suffered from several defects. While Mr. Verner's appellate brief addresses Appellee's notice and lack of service arguments, there is no discernable discussion in response to Appellee's argument that the attempted substituted service was defective. Because Mr. Verner's brief does not address a summary judgment ground upon which the trial court could have based its ruling, the judgment must be affirmed on that basis. *See Leffler*, 290 S.W.3d at 387. Issue One is overruled, and the bill of review summary judgment will be affirmed.

We now turn to Issue Two, in which Mr. Verner challenges the trial court's summary judgment in his personal injury suit. Following the trial court's decision to reverse the default judgment, Mr. Verner amended his petition in the personal injury case, naming "National Oilwell Varco, Inc., f/k/a/ National Oilwell, Inc." as the defendant. The amended petition included two theories of liability against Appellee. First, Mr. Verner alleged that Appellee was liable because it owned and operated the top drive. Second, the amended petition contained an allegation that Appellee failed to properly train and supervise the personnel operating the top drive, which led to the failure that caused Mr. Verner's injuries.[2]

Appellee's motion for summary judgment included two grounds under the traditional standard.[3] First, Appellee argued that it was entitled to judgment as a matter of law because there

---

[2] The petition also stated: "there is a misnomer because of a scheme of similar named entities and corporate structure that is designed to confuse potential litigants and pleads for misnomer." However, this allegation appears to have been abandoned as it was not addressed in the parties' summary judgment arguments, and has not been included in the arguments on appeal.

[3] Appellee failed to specifically identify its motion for summary judgment on Mr. Verner's negligence claim as either a "traditional" motion pursuant to TEX.R.CIV.P. 166a(c), or a "no-evidence" motion, pursuant to TEX.R.CIV.P. 166a(i). However, the motion does include a statement of the "traditional" summary judgment standard and included evidence in support of

was no dispute that the entity was not the owner of the top drive on the rig where Mr. Verner was injured. In the alternative, Appellee argued there was no dispute that it did not employ any of the individuals operating the equipment when Mr. Verner was injured.

To address either of Appellee's summary judgment grounds, we must first address the alleged distinction between Appellee and "National Oilwell Varco, L.P." According to Appellee's motion and attached evidence, "National Oilwell, L.P." sold the top drive to Mr. Verner's employer, Patterson Drilling Company, and employed the top drive operator on the rig where Mr. Verner was injured.[4] In other words, the central point in Appellee's summary judgment motion was that Mr. Verner's cause of action must fail as a matter of law because he sued the wrong business entity; i.e., he named "National Oilwell Varco, Inc.," instead of "National Oilwell Varco, L.P."

In response, Mr. Verner produced summary judgment evidence which he argued raised at least a fact issue regarding the relationship between Appellee and National Oilwell Varco, L.P. f/k/a National Oilwell L.P., through their joint predecessor, "National Oilwell, Inc." In turn, Mr. Verner contends there is at least a fact issue regarding Appellee's responsibility for National Oilwell Varco L.P.'s business activities. The following is a list and summary of the evidence produced in response to Appellee's motion:

---

Appellee's summary judgment arguments. Therefore, to the extent Appellee attempted to establish its entitlement to judgment under the "no-evidence" standard, the motion did not give fair notice of those claims, and we will limit our review to the "traditional" grounds. *See Waite v. Woodard, Hall & Primm, P.C.*, 137 S.W.3d 277, 281 (Tex.App.--Houston [1st Dist.] 2004, no pet.).

[4] As we discussed above, "National Oilwell, L.P." was created when the second "National Oilwell, Inc." split, and is the predecessor to "National Oilwell Varco, L.P."

**Exhibit 1**:   deposition testimony by Ms. Rita Padron, the designated
corporate representative of National Oilwell Varco, L.P.
Several exhibits were discussed during Ms. Padron's
deposition.

'Padron Exhibit No. 2'– Was a document titled, 'AMENDED AND
RESTATED AGREEMENT OF LIMITED PARTNERSHIP OF
NATIONAL-OILWELL, L.P.,' dated January 16, 1996.

'Padron Exhibit No. 3' – Was a Sales Order for drilling equipment,
including a top drive, billed to Patterson Drilling Co, L.P. from 'National
Oilwell Varco.' The Sales Order contains a notation stating that terms of
payment would be made in accordance with prior dealings between 'NOI'
and Patterson. Ms. Padron was unable to testify to the meaning of 'NOI'
other than it was part of the forms her department used during the period
of time when Patterson Drilling purchased the top rig. There is no direct
indication from the summary judgment evidence that 'NOI' refers
specifically to National Oilwell Inc., as opposed to National Oilwell
Varco, L.P.

'Padron Exhibit No. 4'– Is a document containing the standard form terms
and conditions of sale between 'NATIONAL-OILWELL, L.P. and its
AFFILIATES.'

'Padron Exhibit No. 5'– Is a Texas Department of Insurance Certification
of Instruments, and supporting documentation indicating that 'National
Oilwell Inc.' maintained a workers compensation insurance policy in
Texas from June 1, 2003 to June 1, 2004.[5]

**Exhibit 3**:   Excerpts of deposition testimony by Mr. Flint Stults, who
was an employee of 'National Oilwell' at the Patterson rig
when Mr. Verner was injured. Mr. Stults testified that his
job included working at sites where National Oilwell top
drives had been installed for training and servicing
purposes.

**Exhibit 4**:   Affidavit of Mr. Mark A. Cevallos, custodian of records for
the Law Offices of Miller & Bicklein. According to the
affidavit, during the process of investigating the identity of
'Defendant, National Oilwell,' the 'Defendant's' attorney

---

[5] A second copy of the Department's "Certification of Instruments" is also attached to
Mr. Verner's response as summary judgment "**Exhibit 2**."

provided him with documentation showing that the 'Defendant' owned property at 11919 FM 529, in Houston Texas. Tax records listed the owner of the property as 'National Oilwell, Inc.' and the same address is referenced on the invoice for the top drive sold to Patterson Drilling.

**Exhibit 5**: Corporate stock certificate of 'NOW Oilfied Services, Inc.' certifying that on August 29, 1996, 'National-Oilwell, Inc.' owned one thousand shares of the common stock of 'Now Oilfield Services, Inc.'

Mr. Verner makes several arguments in his attempt to establish that genuine issues of material fact exist regarding Appellee's ownership interest in the top drive, and its relationship to the top drive operators who were on site at the time of the accident. First, Mr. Verner contends the Patterson Sales Order's ("Padron Exhibit No. 3" above) reference to the entity "NOI" raises the possibility of the existence of a relationship between Appellee, its predecessor, and National Oilwell Inc., sufficient to impute the business activities of the entities to each other. Second, Mr. Verner's summary judgment response refers to the January 16, 1996 partnership agreement ("Padron Exhibit No. 4" above). In his argument, Mr. Verner quotes the following language from the agreement:

> [E]ach of the original partners assigned all of their interests as a limited partner in the Partnership to NOW, Inc., (formerly National Oilwell, Inc.). . . . [E]ach of the original partners assigned all of their interests as a limited partner in the Partnership to National Oillwell, Inc., (formerly NOW Oilfield Services, Inc.).

Based on these passages, Mr. Verner concludes that the partnership agreement simultaneously made "National Oilwell, Inc.," as the new general partner, and a new limited partner of "National Oilwell, L.P.," which had been "National Oilwell, Inc."

Finally, Mr. Verner contends the "NOW Oilfield Services, Inc." stock certificate ("Exhibit 5" above), demonstrates that the current "National Oilwell, Inc." was previously owned

by a prior "National Oilwell, Inc.," and that through the stock transaction, the entity "bought itself, and then made itself a limited partner *and* a general partner." [Emphasis in original].

Based on this evidence, Mr. Verner concludes that Appellee failed to meet its summary judgment burden because genuine issues of material fact remain as to Appellee's relationship to the entity which sold the injurious top drive to Patterson Drilling, and the employer of the top drive operators. We disagree.

To reverse the summary judgment order based on the evidence and arguments cited, this Court would be forced to infer both the existence and nature of close corporate relationships between Appellee and at least two other entities. Such inferences (i.e., that a relationship between Appellee, National Oilwell Varco and National Oilwell, Inc., existed, and that the relationship was of such a character as to make one entity responsible for the business activities and alleged negligence of the others) would constitute little more than a suspicion of such facts. Mere suspicion of a fact is not equal to a genuine issue of material fact, and cannot serve to defeat the summary judgment in this case. *See Ford Motor Co. v. Ridgeway*, 135 S.W.3d 598, 601 (Tex. 2004)(noting that to raise a genuine issue of material fact, the summary judgment evidence must transcend mere suspicion and rise to a level that would enable reasonable-minded people to differ in their conclusions). Because the summary judgment evidence does not raise a genuine issue of material fact regarding Appellee's ownership or sale of the top rig equipment at issue, the summary judgment was not granted in error. Issue Two is overruled.

Having overruled both of Appellant's issues, we affirm the trial court's take-nothing judgment.

June 22, 2011

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.