

**NUMBER 13-12-00019-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**OLGA A. LIMON,**                                      **Appellant,**

**v.**

**YUSUKE M. YAHAGI, M.D.,**                         **Appellee.**

---

**On appeal from the 377th District Court
of Victoria County, Texas.**

---

**MEMORANDUM OPINION**

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Chief Justice Valdez**

By one issue, appellant, Olga L. Limon, appeals the trial court's summary judgment in favor of appellee, Yusuke M. Yahagi, M.D. We affirm.

## I. BACKGROUND

This case involves a healthcare liability claim brought under Chapter 74 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. §74.000-.507(West 2011). At issue in this case is a surgical procedure (specifically, a

stent placement), which was performed on May 7, 2008 and which, according to appellant, should not have been performed.

Appellee performed the procedure after a CT scan showed a small aneurysm (i.e., dilation) of appellant's aorta and a "crescentric thrombus" (i.e., clot) or obstruction of the aorta. The thrombus caused the aorta to be severely narrowed or occluded (up to 70%). Appellee concluded that the obstruction was causing appellant to experience intermittent claudication (i.e., pain when walking caused by inadequate blood supply). Appellee advised appellant that the safest treatment for the obstruction was to place a stent endovascularly (i.e., inside the aorta) through the obstructed area to open it and prevent clots from traveling downstream to small arteries, particularly the bilateral lower extremities, which would prevent reduced blood flow or ischemia.

The stent placement was successful in relieving the obstruction in appellant's aorta and in opening the aorta. Appellant experienced no complications from the procedure. On November 4, 2009, appellant had a follow-up appointment with her cardiologist, Harish Chandna, M.D., who told her that appellee had performed the stent placement unnecessarily because the aneurysm was not wide enough to require surgery.

On May 3, 2010, appellant sent a notice letter to appellee, advising him of her potential healthcare liability claim. On July 22, 2010, appellant filed suit against appellee, alleging that no procedure was indicated because her abdominal aortic aneurysm was uncomplicated and measured only 2.2 centimeters in diameter. Appellant alleged that, according to accepted medical literature and the stent's product insert, no surgery should have been performed unless the aneurysm measured at least 4.5 to 5.0 centimeters in diameter. Appellant further alleged that the standard of care

2

for an aneurysm measuring 2.2 centimeters is to monitor the patient every 6-12 months to determine whether the aneurysm is getting bigger.

Appellee moved for summary judgment on the basis that appellant filed suit one day outside the relevant limitations period. Appellant asserted fraudulent concealment to avoid appellee's limitations defense and attached evidence in support thereof to her response to appellee's motion for summary judgment. The trial court granted appellee's motion for summary judgment, and this appeal ensued.

## II. ANALYSIS

### A. Applicable Law

Healthcare liability claims have a two-year limitations period. TEX. CIV. PRAC. & REM. CODE § 74.251(a) (West 2011). The limitations period for a healthcare liability claim begins on one of three dates: (1) the occurrence of the breach or tort; (2) the last date of the relevant course of treatment; or (3) the last date of the relevant hospitalization. *See Shah v. Moss*, 67 S.W.3d 836, 841 (Tex. 2001). If the date the alleged tort occurred is ascertainable, limitations must begin on that date. *Id.* And if the date is ascertainable, further inquiry into the second and third categories is unnecessary. *Id.*

Notice given as provided in chapter 74 tolls the applicable statute of limitations to and including a period of 75 days following the giving of the notice, and the tolling applies to all parties and potential parties. TEX. CIV. PRAC. & REM. CODE § 74.051(c) (West 2011).

Fraudulent concealment estops a defendant from relying on the statute of limitations as an affirmative defense to the plaintiff's claim. *Malone v. Sewell*, 168 S.W.3d 243, 251 (Tex. App.—Fort Worth 2005, pet. denied). Fraudulent concealment

3

tolls limitations until the plaintiff discovers the fraud or could have discovered the fraud with reasonable diligence. *Shah*, 67 S.W.3d at 841. Fraudulent concealment consists of four elements: (1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception. *Malone*, 168 S.W.3d at 252.

### B. Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *S.W. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *S.W. Elec. Power Co.*, 73 S.W.3d at 215; *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am.*, 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true. *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex. 1995). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.*, 391 S.W.2d at 47.

A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Rhone-*

4

*Poulenc, Inc. v. Ramirez*, 997 S.W.2d 217, 223 (Tex. 1999). To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996).

Once the defense of limitations is conclusively established, and the plaintiff resists summary judgment by asserting fraudulent concealment, the burden is on the plaintiff to raise a fact issue on each element of fraudulent concealment. *Shah*, 67 S.W.3d at 841 (citing *Am. Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 830 (Tex. 1994)).

### C. Discussion

Appellant pled several causes of action against appellee; however, there is no dispute that each of the causes of action is a healthcare liability claim subject to the two-year limitations period in section 74.251(a). *See* TEX. CIV. PRAC. & REM. CODE § 74.251(a). Appellant argues that the trial court erred in granting summary judgment in favor of appellee because she produced evidence that raised a genuine issue of material fact as to each element of fraudulent concealment.

We agree with appellee that, unless the statute of limitations was tolled by fraudulent concealment, the limitations period commenced on May 7, 2008, the date of the surgery. *See Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex. 1985) ("We hold that the Legislature's intent in passing Art. 4590i, § 10.01, was to abolish the discovery rule in cases governed by the Medical Liability Act."); *see also Earle v. Ratliff*, 998 S.W.2d 882, 887 (Tex. 1999) (holding that limitations began on surgery date because the plaintiff did not allege post-surgical negligence); *Gormley v. Stover*, 907 S.W.2d 448, 449-50 (Tex. 1995) (same). Appellant's notice letter tolled the limitations period for 75 days, extending it to July 21, 2010. Thus, unless appellant produced evidence raising a

5

genuine issue of material fact on each element of fraudulent concealment, her lawsuit, filed July 22, 2010, was barred by limitations.

The basis of appellant's lawsuit is that appellee deceived her into undergoing an unnecessary surgical procedure. To establish fraudulent concealment, appellant was required to prove the following: (1) the existence of a tort based on appellee performing an unnecessary surgical procedure; (2) appellee's knowledge of the tort; (3) appellee's use of deception to conceal the tort; and (4) appellant's reasonable reliance on the deception. *See Malone*, 168 S.W.3d at 252.

### 1. An Underlying Tort

Appellant's summary judgment evidence included an affidavit from her expert, Devinder S. Bhatia, M.D., a general surgeon who has performed abdominal aortic aneurysm ("AAA") stent procedures and is knowledgeable about the standard of care:

> In treating AAA, it is the standard of care that intervention, i.e., surgery, is not recommended for asymptomatic infrarenal or juxtarenal AAAs if they measure less than 5.0–5.5 cm in diameter in men or less than 4.5–5.0 cm in diameter in women, absent certain circumstances that do not exist in this case. If an AAA is measured at less than these diameters, the practice protocol requires one to monitor the progression in size of the AAA every 6–12 months.

Dr. Bhatia reviewed appellant's care records from appellee and her hospital chart. In addition, his affidavit included and discussed medical literature on the topic of the standard of care for the treatment of AAA and the product insert for the AAA stent that appellee used on appellant. Based on the foregoing, Dr. Bhatia opined that appellant was not only negligent, but also grossly negligent:

> Based upon my review of these records and my experience as a Cardiovascular and Thoracic Surgeon who has undergone the training reflected in my CV attached as Exhibit A, it is my opinion that [appellee] failed to follow the standard of care for the treatment of [appellant's] AAA as reflected in the medical records attached to this affidavit as Exhibits B-

6

F. In this case, objective studies showed that [appellant's] aortic aneurysm was measured at 2.2 cm. This study performed by radiologist, Dr. Steven C. Schnicker, M.D., was the only one available to [appellant] before he made the decision to place the aortic stent graft into [appellant]. The standard of care for an aortic aneurysm of this size does not require emergent intervention as [appellant] was lead to believe by [appellee]. In fact, no intervention of any kind is called for with an aneurysm of this size. The standard of care only calls for management of these aneurysms by performing serial examinations with either ultrasound of the abdomen or CT scan of the abdomen every six months to a year.

. . .

Despite this clear contraindication to any surgical intervention, [appellee] proceeded with AAA stent graft placement. This action was inappropriate and violated the standard of care for treatment of a 2.2 cm aortic aneurism. No intervention should have been performed as recommended by the guidelines of the American College of Cardiology, American Heart Association and other reputable Society guidelines mentioned below.

. . .

If negligence is defined as [not] exercising the care that a Cardiovascular and Thoracic Surgeon of ordinary prudence would have done under the same or similar circumstances, it is my opinion that [appellee] was certainly negligent in his care and treatment of [appellant]. If "gross negligence" means more that momentary thoughtlessness, inadvertence or error in judgment such that there is such an entire want of care as to establish that the act or omission complained of was the result of actual conscious indifference to the rights, safety, and welfare of [appellant], then it is my opinion that [appellee] was also grossly negligent. In other words, by performing surgery under these circumstances, [appellee] departed from the ordinary standard of care to such an extent that it created an extreme risk of harming [appellant], especially considering the probability and magnitude of the costs of surgery and the complete lack of indication for same with respect to [appellant].

Dr. Bhatia also addressed the standard of care with regard to the condition of "crescentric thrombus," which, according to appellee, was an additional reason for the surgery:

[Appellee] has suggested that the crescentric thrombus noted in Dr. Schnicker's report called for intervention even if the size of the aneurysm did not. He's also suggested that [appellant's] bilateral lower extremity pain complaints justify surgery. I disagree with both of these suggestions.

With respect to the crescentric thrombus, and as reflected in Dr. Schnicker's report, this was a small "uncomplicated" infrarenal abdominal aortic aneurysm. No surgical intervention should have been performed based upon the presence of thrombus. As to the presence of pain, [appellee] failed to exclude a neurological basis for [appellant's] bilateral lower extremity pain. He ordered no test, such as an MRI, to determine the genesis of her pain complaints. As such, if pain was the reason he performed surgery, he didn't do his job to determine the cause of her pain before surgery and should not have performed it on that basis.

Elsewhere in his affidavit, Dr. Bhatia elaborated further on his opinion regarding the crescentric thrombus, which was based on an article attached as Exhibit K to his affidavit:

This study shows that thrombus in the aorta actually may reduce wall stress in an aortic aneurysm and thereby reduce the threat of rupture, which is why surgical interventions in the aorta are performed. Thus, the presence of thrombus noted by [appellee] to have served as a basis for intervention argues against surgical intervention in uncomplicated aneurysms as [appellant] had.

Appellant's summary judgment evidence also tended to prove that, as a result of the unnecessary surgical procedure, appellant suffered economic damages in the amount of $2,528.17 for a surgical fee charged by appellee and $80,246.10 in hospital charges payable to a hospital with which appellee had an exclusive relationship.

For purposes of fraudulent concealment, we conclude that appellant's summary judgment evidence was sufficient to raise a fact issue on the element of an underlying tort based on appellee's performance of an unnecessary surgery. *See id.*

### 2. Appellee's Knowledge of the Underlying Tort

To successfully assert fraudulent concealment, appellant was also required to create a fact issue on appellee's "actual knowledge of the fact that a wrong ha[d] occurred." *See Earle*, 998 S.W.2d at 888. In other words, proof of fraudulent concealment requires more than evidence that the physician failed to use ordinary care;

8

it also requires evidence that the defendant actually knew the plaintiff was in fact wronged. *Id.*

As set forth above, appellant's summary judgment evidence was sufficient to raise a fact issue on appellee failing to use ordinary care insofar as he performed a surgical procedure that was unnecessary. Appellant's summary judgment evidence also showed that appellee either knew or reasonably should have known that the surgical procedure was unnecessary. Specifically, the affidavit of Dr. Bhatia provided circumstantial evidence tending to establish appellee's actual knowledge of the wrong:

> The product insert, which [appellee] should've seen prior to the implantation of the . . . Stent Graft into [appellant], establishes [appellee] knew that even the manufacturer of this graft could not establish an indication for implantation of this device into [appellant].[1] This is significant because manufacturers spend millions of dollars to test products for use to determine the safety and efficacy of medical devices. Despite these significant expenditures and the studies performed during clinical trials, the manufacturer could not establish that this device was safe and effective for [appellant's] condition. This certainly supports my opinions about [appellee's] grossly negligent conduct. It also establishes that [appellee] should have told [appellant] that any representation he had previously made about needing surgery was mistakenly made if that was the case. His failure to do so makes me believe that he intentionally wanted to alarm [appellant] into having surgery.

For purposes of fraudulent concealment, we conclude that appellant's summary judgment evidence was sufficient to raise a fact issue on the element of appellee's actual knowledge of the underlying tort or wrong involving appellee's performance of an unnecessary surgery. *See Malone*, 168 S.W.3d at 252.

---

[1] The product insert for the stent in question stated the manufacturer's criteria to establish an indication for implantation as any one of the following: (1) an aneurysm with a diameter greater than 5 centimeters; (2) an aneurysm with a diameter of 4-5 centimeters, which has increased in size by 0.5 centimeters or more in the last six months; or (3) an aneurysm with a diameter twice the size of an normal infrarenal aorta.

9

### 3. Appellee's Use of Deception to Conceal the Tort

The third element for fraudulent concealment requires proof that appellee used deception to conceal his wrongdoing. Here, we conclude appellant's summary judgment evidence was insufficient to raise a fact issue.

There is a distinction between an underlying tort, such as fraud, and the doctrine of fraudulent concealment, which "may toll the statute of limitations *after* the cause of action accrues." *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011) (emphasis added). A cause of action for a tort, including a tort involving deception, such as what appellant has alleged in this case, is said to accrue at the time of the occurrence of the breach or tort. *See Shah*, 67 S.W.3d at 841. As the party asserting fraudulent concealment, appellant was required to establish not only the underlying wrong (i.e., the tort involving an unnecessary surgery), but also that "the defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff." *See Earle*, 998 S.W.2d at 888.

In this case, this standard required appellant to establish that appellee concealed the fact that he had wronged her by performing an unnecessary surgery. *See S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996) (explaining that the fraudulent concealment doctrine defers accrual because "a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run"). Appellant did not meet this burden. She failed to produce any evidence that appellee committed any deceptive conduct *after* he had committed the underlying tort involving the unnecessary surgery. *See Malone*, 168 S.W.3d at 252. We also note that appellant failed to produce evidence on the fourth element for fraudulent concealment: her reasonable reliance on the deception. *See id.* There was no evidence offered by appellant that tended to

10

prove that any deceptive conduct was committed by appellee after the surgery or that appellant reasonably relied on any such conduct. *See id.*

Accordingly, the trial court did not err in concluding that appellant's claims brought under Chapter 74 of the Texas Civil Practice and Remedies Code were barred by the two-year statute of limitations and its granting of summary judgment in favor of appellee was not error. *See* TEX. CIV. PRAC. & REM. CODE § 74.251(a).

Appellant's issue is overruled.

## III. CONCLUSION

The judgment of the trial court is affirmed.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
2nd day of August, 2012.

11